**Pleas R. SMITH, As Guardian of the Person and Estate of Evan W. Smith, Jr., Mentally Incompetent, Appellant,**

v.

**BAPTIST MEMORIAL HOSPITAL SYSTEM and Emergency Physician's Affiliates, Appellees.**

**No. 04–85–00558–CV.**

Court of Appeals of Texas,
San Antonio.

Oct. 15, 1986.

Rehearing Denied Nov. 26, 1986.

Andrew Todesco, Jim M. Perdue, Perdue, Turner & Berry, Houston, for appellant.

Thomas H. Crofts, Jr., Groce, Locke & Hebdon, Emilio M. Garza, San Antonio, for appellees.

Before ESQUIVEL, TIJERINA * and DIAL, JJ.

## OPINION

ESQUIVEL, Justice.

This is an appeal from a summary judgment in favor of appellees, Baptist Memorial Hospital System (BMHS) and Emergency Physician's Affiliates (EPA), and against appellant, Pleas R. Smith (Smith). Smith is the guardian of the person and estate of Evan W. Smith, Jr., the plaintiff in this cause.

This case arose from an emergency room incident in which Evan W. Smith experienced severe spasms and cardio-respiratory arrest after the administration of penicillin and bicillin for the treatment of a sore throat. Smith sued the emergency room physician Dr. Harry Henderson, the professional association with whom the doctor was affiliated (EPA), and the hospital (BMHS). BMHS and EPA filed motions for summary judgment.

The trial court's first order partially granted BMHS's motion for partial summary judgment and denied EPA's motion for severance. The order left two issues unresolved:

1) whether Dr. Henderson was unqualified or incompetent as a physician, and

2) whether an agent or employee or servant of BMHS was negligent in the treatment of Smith.

Finally, the trial court specifically found that Dr. Henderson was *not* an agent or employee of BMHS. Smith amended his petition to allege that BMHS was estopped from denying that the Doctor was its agent.

A second order was issued by the trial court granting in all things BMHS's second motion for summary judgment. In a subsequent third order, the trial court rendered summary judgment that Smith take nothing from EPA, severed Smith's claim against Dr. Henderson, and ordered BMHS to take nothing by its cross-claim against EPA.

Smith brings two points of error on appeal:

### POINT OF ERROR I

THE TRIAL COURT ERRED IN GRANTING THE HOSPITAL'S MOTION FOR SUMMARY JUDGMENT WHEN THERE WAS A FACT ISSUE RAISED AS TO WHETHER DR. HENDERSON WAS THE OSTENSIBLE AGENT OF THE HOSPITAL.

### POINT OF ERROR II

THE TRIAL COURT ERRED IN GRANTING EMERGENCY PHYSI-

* Associate Justice Tijerina not participating.

CIANS AFFILIATES' MOTION FOR SUMMARY JUDGMENT WHEN FACT ISSUES WERE RAISED REGARDING THE VICARIOUS LIABILITY OF EMERGENCY PHYSICIANS AFFILIATES FOR THE ACTS OF DR. HENDERSON.

BMHS, in its reply point one, alleges Smith waived the issue of ostensible or apparent agency by not timely responding to BMHS's second motion for summary judgment. In its second reply point, BMHS alleges the trial court correctly rendered summary judgment that Smith take nothing from BMHS, because there was no genuine issue of fact as to whether BMHS could be vicariously liable for the negligence of Dr. Henderson on a theory of ostensible agency.

Smith urges this Court to consider three counter-points in response to BMHS's reply points:

(1) SINCE OSTENSIBLE AGENCY WAS NOT IN ISSUE AND NOT BEFORE THE TRIAL COURT IN THE HEARING ON THE SECOND MOTION FOR SUMMARY JUDGMENT ON BEHALF OF BAPTIST MEMORIAL HOSPITAL, APPELLANT DID NOT WAIVE THAT THEORY FOR APPEAL.

(2) THE ISSUE OF OSTENSIBLE AGENCY WOULD HAVE BEEN PROPERLY BEFORE THE TRIAL COURT IN THE SECOND SUMMARY JUDGMENT HEARING BY VIRTUE OF PREVIOUS RESPONSES AND MOTIONS FILED BY APPELLANT.

(3) THE TRIAL COURT INCORRECTLY GRANTED SUMMARY JUDGMENT BECAUSE THERE WERE GENUINE ISSUES OF MATERIAL FACT ON THE THEORY OF APPARENT AGENCY REGARDING THE VICARIOUS LIABILITY OF BAPTIST HOSPITAL FOR THE NEGLIGENCE OF DR. HARRY HENDERSON.

In considering Smith's first point of error, we are faced with deciding:

(1) Was the issue of ostensible agency before the trial court during its consideration of BMHS's first motion for summary judgment?

(2) What effect did the untimely filing of Smith's response to BMHS's second motion for summary judgment and Smith's third amended original petition have on the issue of ostensible agency?

As an affirmative answer to the first issue is dispositive, we decline to address the second question.

The procedural history of this case is as follows:

May 26, 1981—Smith's original petition filed.

June 4, 1981—BMHS's original answer filed.

April 27, 1982—Smith's first amended original petition filed.

May 20, 1982—EPA's original answer to Smith's first amended original petition.

Oct. 28, 1983—BMHS and EPA file their first motion for summary judgment.

—BMHS files original cross claim against EPA.

Nov. 16, 1983—EPA files its first supplemental motion for summary judgment.

Dec. 1, 1983—Smith's response to BMHS's motion for summary judgment; The Doctrine of Ostensible Agency is first included in Smith's response.

Dec. 1, 1983—Smith's response to EPA's motion for summary judgment is also filed.

Jan. 9, 1984—Smith's second amended original petition.

Jan. 13, 1984—First order granting partial summary judgment for EPA and BMHS.

March 7, 1985—Cross-action filed by BMHS complaining of the doctor and EPA.

April 29, 1985—Smith's third amended original petition; the doctrine of ostensible agency is first *plead* as a defense by Smith.

July 30, 1985—Smith files a motion to dissolve and/or reverse the alleged erroneous partial summary judgment for EPA and BMHS. (based on ostensible agency).

July 31, 1985—Smith files a first supplemental petition wherein he argues ostensible agency as a defense.

Aug. 12, 1985—Smith files a second supplemental petition wherein he again argues ostensible agency as a defense.

Aug. 23, 1985—BMHS files its first amended original answer.

—EPA files its response to Smith's motion to dissolve and/or reverse the alleged erroneous partial summary judgment for EPA and BMHS.

—BMHS files its response to Smith's motion to vacate the partial summary judgment.

Sept. 11, 1985—Motion for Summary Judgment of EPA.

—Smith's motion to dissolve and/or reverse an alleged erroneous partial summary judgment is overruled.

Oct. 4, 1985—Smith files a response to BMHS's motion for summary judgment.

Oct. 10, 1985—Second order grants BMHS's second motion for summary judgment.

Nov. 13, 1985—Smith files a response to EPA's motion for summary judgment.

—Third order by the trial court grants EPA's motion for summary judgment. (Supplemental order Dec. 5).

Dec. 5, 1985—Judgment—Smith takes nothing against BMHS.

■ In considering the foregoing history, pleadings do not constitute summary judgment proof. *Hidalgo v. Surety Savings & Loan Association*, 462 S.W.2d 540, 545 (Tex.1971). Contentions must be expressly presented in the written motion or in a written answer or response to the motion, and pleadings are not to be considered in determining whether fact issues are expressly presented in summary judgment motions. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). With the exception of an attack on the legal sufficiency of the grounds expressly raised by the movant in his motion for summary judgment, the non-movant must expressly present to the trial court any reasons seeking to *avoid* movant's entitlement, such as those set out in TEX.R.CIV.P. 93–94, and he must present summary judgment proof when necessary to establish a fact issue. *City of Houston*, 589 S.W.2d at 678. The non-movant must, in a written answer or response to the motion, expressly present to the trial court those issues that would defeat the movant's right to a summary judgment and failing to do so, may not later assign them as error on appeal. *City of Houston*, 589 S.W.2d at 679.

In the case at bar, Smith initially alleges the doctrine of ostensible agency in his December 1, 1983, response to the appellee's first motion for summary judgment. Smith failed to plead the ostensible agency of Dr. Henderson against appellees until his third amended petition which he filed subsequent to the entry of the trial court's first order. This Court is confronted with the following procedural issue: Was Smith required to plead the affirmative defense of ostensible agency in his original petition pursuant to Rule 94 or could Smith argue the agency issue for the first time in his summary judgment response? We hold that he was not required to so plead.

■ TEX.R.CIV.P. 94 requires that the affirmative defense of estoppel, and its variations, of which ostensible agency is one, must be plead or it is waived. When responding to a party's motion for summary judgment by raising an affirmative defense, unless each element of the affirmative defense is raised by evidence which would be admissible upon the trial of the case, the affirmative defense will not prevent the granting of a summary judgment. The party raising the affirmative defense must make a fact issue on this defense. Hittner, *Summary Judgments in Texas*, 35 BAYLOR L.REV. 207 (1983).

In an analogous cause to the one at bar, a petitioner failed to allege in his pleadings that the respondents had waived compliance with certain provisions regarding notice of suit in an automobile liability policy. *Womack v. Allstate Insurance Co.* 156 Tex. 467, 296 S.W.2d 233 (1956). Our Supreme Court held therein that despite the requirements of Rule 94 requiring a trial court to be guided by the pleadings in determining the issues that may exist in a case, when the depositions, admissions or affidavits disclose facts which show that an amendment to the pleadings of the opposite party will render the position of the moving party insupportable under the substantive law, it cannot be said that the latter has established his right to judgment as a matter of law. *Womack*, 296 S.W.2d at 237; *Rossiter v. Vogel*, 134 F.2d 908, 912 (2d Cir.1943).

■ The procedural issue must then be answered in conjunction with a close review of the record. We hold that despite the absence of pleadings setting out the affirmative defense of estoppel the trial court properly could consider the issue of ostensible agency at the first summary judgment hearing because the summary judgment record evidences a material issue of fact regarding the relationship between Dr. Henderson and BMHS.

■ We agree with BMHS and EPA that the doctrine of apparent authority is based on estoppel. *Rourke v. Garza*, 530 S.W.2d 794, 803 (Tex.1975); *Chastain v. Cooper & Reed*, 152 Tex. 322, 257 S.W.2d 422, 427 (1953). It is essential to the application of the doctrine of estoppel that the person claimed to be estopped have had knowledge of all material facts at the time of the conduct alleged to constitute the basis of the estoppel. *Hallmark v. United Fidelity Life Insurance Co.*, 155 Tex. 291, 286 S.W.2d 133, 136 (1956). Such knowledge may be imputed where the party against whom the estoppel is asserted "has knowledge or information of facts sufficient to put him upon inquiry which if reasonably pursued would lead to the discovery of the controlling fact...." *Champlin Oil & Re-*

*fining Company v. Chastain*, 403 S.W.2d 376, 403–04 (Tex.1965). Furthermore, our Supreme Court has made the following statement by which we are guided:

The doctrine of apparent authority is based on estoppel, and one seeking to charge a principal through the apparent authority of an agent to bind the principal must prove *such conduct on the part of the principal as would lead a reasonably prudent person*, using diligence and discretion *to suppose that the agent has the authority he purports to exercise.* [Emphasis added].

*Chastain v. Copper & Reed*, 257 S.W.2d at 427.

■ A court of appeals is required to view summary judgment proof in the light most favorable to the non-movant and to resolve *against* that party any doubt as to the existence of a genuine issue of material fact. *Mays v. Foremost Insurance Company*, 627 S.W.2d 230, 233–34 (Tex.App.— San Antonio 1981, no writ). The summary judgment record reveals an April 24, 1980, agreement between Arthur P. Allison, Jr., M.D. and James R. Leininger, M.D. to provide medical service to BMHS. The agreement contains the following pertinent provisions:

1) Arthur P. Allison, Jr., M.D. and James R. Leininger, and all Emergency Department Physicians must be duly licensed to practice medicine in the State of Texas and must be members of the Medical Staff of Baptist. Arthur P. Allison, Jr., M.D., James R. Leininger, M.D., and Emergency Department Physicians shall comply with all professional standards, policies and procedures heretofore or hereafter approved and adopted by the Emergency Department of Hospital, after approval by the Medical Executive Board;

2) During the term of this Agreement, Hospitals shall have the following responsibilities, duties and rights: (1) To recognize the emergency services as the Emergency Department of the Medical Staff with a director to represent the Affiliates and the Emergency Depart-

ment Physicians insofar as their medical membership is concerned, and to coordinate its activities;

3) It is understood and agreed by the parties that neither Affiliates, Arthur P. Allison, Jr., M.D. and James R. Leininger, M.D., nor any Emergency Department Physician with whom Affiliates may contract shall in any sense be considered to be employees of Baptist or of Hospitals, it being recognized that such persons are licensed physicians and not subject to the supervision, management, direction, control, or right of control of Baptist of of Hospitals in the performance of their professional services.

When these provisions are read within the broader context of sound public policy, we conclude that a hospital will not be able to artificially screen itself from liability for malpractice in the Emergency Room.

In *Brownsville Medical Center v. Gracia,* 704 S.W.2d 68 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) the Corpus Christi Court of Appeals was faced with parents who had filed an action against a hospital, a physician and a medical center for the wrongful death of their child. These parents alleged facts identical to the instant case:

1) Hospital had contracted with a group of physicians to staff their emergency room;

2) The emergency room doctor that rendered the treatment at issue was hired by that group of physicians;

3) Patients entering the emergency room typically did not ask for a doctor by name, but they would simply ask for a doctor to render treatment;

4) There was no way for a patient entering the emergency room to know whether the treating physician was an independent contractor or an employee of the hospital;

5) Hospital directly billed the patient for the services of the emergency room doctor, as well as for other services rendered in the emergency room.

We agree with Smith that the summary judgment record is replete with examples of the foregoing five aspects of the *Gracia* case. One important distinction between *Gracia* and the instant case is that Gracia went to the jury with his case, while Smith was unable to defeat a motion for summary judgment.

The court in *Gracia* held that the evidence was sufficient to support the jury's findings, upon which the trial court properly predicated its conclusion of law that a Dr. Lorenzana was the ostensible agent of Brownsville Medical Center, and that, accordingly, Brownsville Medical Center was vicariously liable for Dr. Lorenzana's negligence, as found by the jury. *Gracia,* 704 S.W.2d at 75. We agree with the trial court's reasoning in *Gracia.*

RESTATEMENT (SECOND) OF AGENCY § 267 (1958) states the rule of "apparent" or "ostensible" agency:

> One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care of skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

Comment (a) to the foregoing section makes it clear that a plaintiff must have more than a mere belief that the acts were performed by one whom the plaintiff believed to be the defendant's servant. The comment explicitly states:

> There must be such reliance upon the manifestation as exposes the plaintiff to the negligent conduct. The rule normally applies where the plaintiff has submitted himself to the care or protection of an apparent servant in response to an invitation from the defendant to enter into such relations with such servant. A manifestation of authority constitutes an invitation to deal with such servant and to enter into relations with him which are consistent with the apparent authority.

*Id.* at § 267.

The facts are undisputed that Dr. Henderson was on duty at the Emergency

Room of BMHS at the time Smith was admitted for examination. The simple fact Dr. Henderson manifested the authority of a competent physician placed the fact issue of ostensible authority in issue.[1]

Smith arrived in the BMHS emergency room much like any other patient. Smith needed a doctor, he had no personal family physician, and sought appropriate medical treatment from a hospital which held itself out as providing good quality medical care. BMHS insists that there are separate issues involving the hospital's responsibility to provide good quality medical care and the hospital's liability for the acts of its agents. BMHS maintains that to decide these issues together would amount to a simplification of the task before us. We hold that the summary judgment evidence properly raised the material fact issue of Dr. Henderson's agency.

■ Sound public policy demands that when an institution calls itself a "full service hospital" and includes an emergency room as part of its facilities, that institution makes a special statement to the public when it opens its emergency room to provide emergency care for people. *Hannola v. City of Lakewood,* 68 Ohio App.2d 61, 426 N.E.2d 1187, 1190 (1980). An agency by estoppel is established by creating the effect that the appearance that hospital's agents, not independent contractors, will provide medical care to those who enter the hospital. *Id.* 426 N.E.2d at 1190. The appearance is what the patient observes and which he relies upon when entering a full-service hospital.

The facts in *Hannola* closely approximate those of the case before us. In *Hannola,* an executrix of an estate brought an action against a hospital, a city, and a physician alleging that her husband died as a result of medical malpractice committed by the defendants in their treatment provided him in the hospital emergency room. As is the case before us, the plaintiff in

*Hannola* sought treatment at the hospital because of its high quality of medical care and excellent reputation. The appearance of the doctor to the plaintiff in the emergency room was as an employee of the hospital. Similar to the case at bar, Lakewood Hospital had an agreement with West Shore Medical Care Foundation whereby the Foundation hired physicians and provided all the services of physicians for the emergency room of the hospital. Also like the case at bar, the agreement contained a provision that the hospital shall not be liable for injury or damages to any person by reason of any acts or omissions of physicians employed by the Foundation. The Foundation billed patients directly for professional services rendered by physicians employed by the Foundation.

The trial court in *Hannola* entered final summary judgments in favor of the hospital and the city. The appellate court reversed and remanded the cause. The court held that when an institution purported to be a full-service hospital which makes emergency room treatment available to serve the public, the hospital will be estopped to deny that the physicians and other medical personnel on duty providing treatment are its agents. *Id.* at 1190. Assuming proximate cause and damages are present, the hospital will be liable to the injured patient for the acts of malpractice committed in its emergency room regardless of any contractual arrangements with independent contractors. *Id.* at 1190. The rationale which the *Hannola* court employed is simple: the patient who relies on the ostensible agency might have acted differently with knowledge that there was no actual agency. *Id.* at 1190. We agree with this approach. A person who is ill or injured and needs treatment will turn to his local hospital to provide it regardless of prior notice that the physicians are independent contractors. After all, the injured or ill person chooses BMHS and not the EPA for treatment.

1. In addition, a BMHS admitting officer collected the fees from the patient for their use of the emergency room as well as for their use of the emergency physician. While this does not re-

veal a direct exercise of control by the hospital over the doctor, it is evidence of some relationship which the hospital maintained with the doctor.

At bar, the summary judgment evidence raises an issue of material fact as to whether BMHS is estopped to deny that Dr. Henderson, who treated Smith in the hospital emergency room, was the agent of the hospital. The trial court did err in dismissing the case against BMHS by granting summary judgment where there were issues of material fact as to whether Smith relied upon Dr. Henderson's appearance as an agent of the hospital.

■ Furthermore, as in *Hannola*, Smith argues that BMHS failed to ascertain whether Dr. Harry Henderson was properly and adequately qualified in emergency medicine. Based on the deposition provided by Dr. Philip C. Bartlett, M.D., plaintiff's expert witness, it can be concluded that a fact issue exists as to whether the hospital maintained an independent duty to prevent a physician's malpractice.[2]

Finally, as in *Hannola*, the court was faced with the following language in the agreement between Foundation and Lakewood Hospital:

... physicians employed by the West Shore Medical Care Foundation must apply for and obtain appointment as members of the Medical Staff of Lakewood Hospital and that the staff privileges of West Shore Medical Care Foundation physicians may be revoked for cause upon recommendation of the medical staff of the hospital, subject to the appeals procedure in the By-laws of the Medical Staff.

*Id.* 426 N.E.2d at 1192.

In the instant case, the language in the agreement between EPA and BMHS is similar but more general:

... all emergency department physicians must be duly licensed to practice medicine in the State of Texas and must be members of the Medical Staff of Baptist. Arthur P. Allison, Jr., M.D., James R. Leininger, M.D., and Emergency Depart-

ment Physicians shall comply with all professional standards, policies and procedures heretofore or hereafter approved and adopted by the Emergency Department of Hospital after approved by the Medical Executive Board.

The court in *Hannola* found the aforementioned language in the hospital staffing agreement sufficient to raise an issue as to whether the doctor involved was under the control of the hospital and therefore justified the imposition of liability upon the hospital under the respondent-superior doctrine. *Id.* at 1192. By indicating that matters of policy regarding patient care may be established by the Foundation *with the approval* of the Hospital, some material issue of fact regarding the Hospital's control of the physicians is evident. The language mentioned above in the case before us is so similar that we feel the same reasoning is applicable.

We uphold Smith's first point of error.

■ Smith's second point of error alleges the trial court erred in granting EPA's motion for summary judgment because fact issues existed regarding the vicarious liability of EPA for Dr. Henderson's acts. We agree.

EPA provided administrative assistance to BMHS. EPA was contracturally obligated to advise BMHS regarding personnel, equipment, facilities and the working environment in which Dr. Henderson was employed. In his second amended original petition, Smith expressly alleged EPA caused Smith's injuries by, among other things, its:

Failure to assure Mr. Smith would receive medical treatment for his condition that was in accord with sound medical practice so as to maintain Mr. Smith's life and health; ...

Failure to ascertain whether or not defendant Dr. Harry Henderson, was prop-

---

**2.** Furthermore, the hospital clearly may have a duty to prevent a physician's malpractice at least to the extent that it establishes procedures for the granting of staff privileges and for the review of these privileges. *Hannola*, 426 N.E.2d at 1192; *Purcell v. Zimbelman,* 18 Ariz.App. 75, 500 P.2d 335, 341 (1972); *Mitchell County Hospital Authority v. Joiner,* 229 Ga. 140, 189 S.E.2d 412, 414 (1972).

erly and adequately qualified in emergency medicine, familiar with and knowledgable concerning the procedures and policies for medical care of the defendant—hospital and failure to assure the defendant, Dr. Henderson, was adequately trained to exercise proper leadership in emergency room situations;

Furthermore, EPA argues Smith waived the argument of Dr. Henderson's status as an ostensible agent of EPA by failing to argue such a point. As stated earlier, when the depositions, admissions or affidavits disclose facts which show that an amendment to the pleadings of the opposite party will render the position of the moving party insupportable under the substantive law, it cannot be said that the latter has established his right to judgment as a matter of law. *Womack*, 296 S.W.2d at 237.

Smith's expert witness, Dr. Bartlett, testified that his complaints were that:

1) Dr. Henderson did not establish an airway in a timely fashion; and

2) BMHS maintained Dr. Henderson on their staff.

This evidence raises the factual issue of whether Dr. Henderson is qualified and competent to provide proper emergency room care.

It is unnecessary to determine whether a physician working in a hospital emergency room is performing inherently dangerous work. The issue is whether the evidence raises a material issue of fact concerning whether EPA retained a right of control over Dr. Henderson such that it may be vicariously liable for his acts. We hold that Smith presented sufficient summary judgment evidence to raise a material issue of fact regarding EPA's failure to provide an adequate physician to treat BMHS patients. Contrary to EPA's allegation, there is substantial testimony by Dr. Bartlett as to Dr. Henderson's shortcomings in the BMHS emergency room, whether EPA provided a "qualified" or "competent" physician as defined by the provisions in its agreement with BMHS, both of which are fact issues which a jury should address in determining the vicarious liability of EPA.

Additional questions, such as whether Dr. Henderson should have been certified in emergency room medicine and whether Dr. Henderson's previous record as a physician placed EPA on notice as to his lack of minimum qualifications for the position with BMHS, raised fact issues regarding EPA's vicarious liability. An employer has a duty to use ordinary care in employing an independent contractor and if he knowingly employs a negligent contractor, whose negligence in performing the contract injures a third party, he may be liable. *Jones v. Southwestern Newspapers Corporation*, 694 S.W.2d 455, 458 (Tex. App.—Amarillo 1985, no writ); *see Moore v. Roberts*, 93 S.W.2d 236, 239 (Tex.Civ. App.—Texarkana 1936, writ ref'd).

We uphold Smith's second point of error.

As set forth, we hold that the trial court erred in granting a summary judgment as the non-movant successfully raised material issues of fact regarding the ostensible agency of Dr. Henderson and the vicarious liability of BMHS and EPA.

Accordingly, we remand this cause to the trial court for any and all proceedings consistent with this opinion.