**WHEATON VAN LINES, INC., Appellant**

v.

**David MASON, Appellee.**

**No. 2–95–073–CV.**

Court of Appeals of Texas,
Fort Worth.

May 30, 1996.

Rehearing Overruled Aug. 15, 1996.

Scott Patrick Stolley, Thompson, Coe, Cousins & Irons, L.L.P., Dallas, for appellant.

David E. Keltner, Haynes & Boone, L.L.P., Michael B. Paddock, Michael B. Paddock & Assoc., and Winfred Hooper, Jr., David L. Evans, Jeffrey H. Kobs, and Thomas M. Michel, Hooper, Evans & Kobs, L.L.P., Fort Worth, for appellee.

Before DAY, DAUPHINOT and HOLMAN, JJ.

## OPINION

DAY, Justice.

Wheaton Van Lines, Inc., an interstate moving company, appeals a $1.3 million judgment that held Wheaton liable for personal injuries suffered by David Mason during an assault committed by Michael Mullinax, an employee of Wheaton's local booking agent, Absolute De–Lux Movers. After a jury trial, the jury answered issues favorably to Mason, and against Wheaton, on three separate theories of recovery: violations of the Texas Deceptive Trade Practices—Consumer Protection Act[1] (DTPA), negligent hiring,

---

1. Tex.Bus. & Com Code Ann. §§ 17.46, 17.50 (Vernon 1987 & Supp.1996).

and vicarious liability due to Wheaton's agency relationship with Absolute De–Lux. Because we find as matters of law that (1) any DTPA violations committed by Wheaton were not the producing cause of the injuries complained of; (2) Wheaton owed no duty to Mason under the facts of this case; and (3) that Absolute De–Lux Movers' actions were not within the scope of the agency relationship with Wheaton, we reverse the judgment of the trial court and render a take-nothing judgment against Mason on his claims against Wheaton.

## THE FACTS

Appellant Wheaton Van Lines, Inc. is a moving company headquartered in Indianapolis, Indiana, with Interstate Commerce Commission authority to perform interstate moves only. Wheaton has no authority to perform intrastate or local moves, and would be subject to regulatory sanctions if it were to do so. To assist with interstate moves, as well as to solicit business, Wheaton has agency contracts with approximately three hundred local movers nationwide. These local agents provide several services for Wheaton that include acting as a "booking agent," which generates a cost estimate, and acting as an "origin agent," which involves dismantling and packing household goods before the truck arrives. Also, the agents are to provide Wheaton with helpers to load the truck if helpers are available at the time needed. Wheaton's agents are free to perform intrastate and local moves on their own, provided they have the appropriate regulatory permits, but any such moves are separate from Wheaton's interstate business and are done without Wheaton's involvement. Wheaton's agents are allowed to advertise Wheaton's interstate services using Wheaton's name and logo.

One of Wheaton's local agents was David Lux, a sole proprietor doing business as Absolute De–Lux Movers. Absolute De–Lux was primarily a local mover. The only business Absolute De–Lux did with Wheaton involved interstate moves, and that involved only about six moves a year, or less than 10% of Absolute De–Lux's business.

Under the agency contract between Wheaton and Absolute De–Lux, orders for Wheaton's interstate services could be solicited and received by Absolute De–Lux. Wheaton received no money from any intrastate or local moves conducted by Absolute De–Lux. When Absolute De–Lux provided helpers to Wheaton for interstate moves, the helpers were paid directly by Wheaton, not by Absolute De–Lux.

In May 1991, appellee David Mason was moving from one apartment to another within the same apartment complex. At trial, Mason testified he was aware of Wheaton's reputation as a national company. Mason located a Yellow Pages advertisement where he saw the name of Wheaton prominently displayed. The advertisement also included Wheaton's Good Housekeeping Seal of Approval and an endorsement as the official movers of Steinway & Sons pianos. This advertisement was paid for and placed by Absolute De–Lux, without the express knowledge or consent of Wheaton Van Lines, Inc. Mason testified that he called the number listed in the advertisement and the telephone was answered with a greeting that included something about Wheaton in it. At trial, Lux denied that he or his employees ever used the name "Wheaton" in a telephone greeting. Mason arranged for his move to be performed on Sunday, May 19, 1991. On that day, two of Lux's employees, driver Craig Pritchett and moving helper Michael Mullinax, appeared with a truck and trailer bearing the name "Absolute De–Lux Movers." Mason testified that he asked the men if they were associated with Wheaton and that Pritchett replied they do the local moves for Wheaton. Lux testified at trial that he never instructed any employee to represent that Wheaton was involved in a local move. Lux also testified that Wheaton receives no money from local moves performed by Absolute De–Lux. Mason admitted he had no knowledge of the nature of the relationship between Absolute De–Lux and Wheaton, whether Wheaton can move locally, whether Wheaton received any money or benefit from his local move, whether Pritchett or Mullinax were employees of Wheaton, or whether Wheaton had anything to do with placing the Yellow Pages advertisement.

The move required only one van load and took approximately three hours.

Shortly after the move, Mason discovered that a white box containing music compact discs was missing. He notified Absolute De–Lux. The next day, Monday, May 20, 1991, Lux contacted Mason and stated that two of his other employees had seen Mullinax with a white box shortly after the move. Lux notified the police about the theft and unsuccessfully attempted several times to contact Mullinax through Mullinax's mother.

Mullinax contacted Lux on Thursday, May 23, 1991 from a local jail in another municipality. Mullinax was in jail on unrelated charges and asked Lux for his final paycheck. Lux, believing he could not legally withhold Mullinax's paycheck, agreed to give Mullinax's wife the check. But Lux also told Mullinax that he wanted the white box returned and that the check would be Mullinax's last because he was fired for the theft. Mullinax's prior criminal record included four drug offenses and convictions for burglary of a habitation and robbery causing bodily injury. Lux testified that he neither knew about nor did he check into Mullinax's criminal record when he hired Mullinax. At the time, it was not Lux's policy to check an applicant's criminal background.

On May 30, 1991, seven days after being terminated from Absolute De–Lux and eleven days after moving Mason, Mullinax pounded on the door of Mason's new apartment late at night. As Mason was calling 911, Mullinax broke down the door and attacked Mason with a butcher knife. During the attack, Mullinax cursed Mason for accusing him of stealing the compact discs. Mullinax also made Mason lie on the floor, and Mullinax then beat Mason with a fireplace poker. Mason had left the phone off of the hook, so the 911 operator recorded the attack. The police arrived and arrested Mullinax, who was later convicted of attempted murder. Mason suffered broken bones in and severe cuts on his hands, as well as severe lacerations on his forehead and scalp and a possible skull fracture. In statements to the police, Mason referred to Mullinax as an employee of Absolute De–Lux.

Mason sued Lux and Wheaton for the assault. Mason asserted that Lux and Wheaton were negligent in hiring Mullinax and that Wheaton was negligent in failing to ensure that Lux checked the criminal background of applicants wanting to work for Absolute De–Lux. Mason also alleged violations of the DTPA against both Lux and Wheaton, as well as Wheaton's vicarious liability under an agency relationship theory. The jury found both Lux and Wheaton negligent, apportioning 25% of the negligence to Wheaton. The jury also found DTPA violations by both Wheaton and Lux, apportioning 50% of the responsibility to each. Additionally, the jury found Lux to be the agent of Wheaton with regard to both the negligent conduct and the DTPA violations. The jury further awarded past damages of $200,000 and future damages of $400,000. Mason elected to recover under the most favorable theory available. The trial court entered judgment against Wheaton and Lux for actual damages of $600,000 and awarded attorneys' fees of $400,000. The trial court apparently rendered its judgment based on recovery under the DTPA. Lux did not appeal.

### Wheaton's Points of Error

Under the jury's answers to the issues submitted, the judgment of the trial court could be based on any of three legal theories: (1) direct negligence by Wheaton; (2) direct DTPA violations by Wheaton; and (3) vicarious liability under an agency relationship theory. Wheaton has arranged its points of error into groups addressing each theory. Points of error one and two assert that Wheaton owed Mason no duty as a matter of law and that the evidence was insufficient to support the jury's answer finding Wheaton negligent. Point of error three argues that the evidence was insufficient to support the jury's finding that Wheaton engaged in DTPA violations that were the producing cause of the injuries which Mason complains of. Wheaton's fourth through ninth points of error assert various errors in the jury's finding on vicarious liability under an agency relationship. The remaining points of error, points ten through fifteen, address damages, attorneys' fees, and prejudgment interest.

## THE DTPA CLAIM

Because the apparent basis of the trial court's judgment was the DTPA, we will first address appellant's argument concerning point of error three. Wheaton asserts the evidence was legally and factually insufficient to support the jury's finding that Wheaton engaged in false, misleading, or deceptive acts that were a producing cause of Mason's damages. The issue submitted to the jury included seven possible "laundry list" violations of the DTPA and provided a single answer blank for the jury to answer either "yes" or "no." *See* TEX.BUS. & COM.CODE ANN. § 17.46(b) (Vernon Supp.1996). The jury answered affirmatively.

### Standard of Review

■ In determining a "no evidence" point, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence. *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex. 1993).

■ A "no evidence" point of error may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Juliette Fowler Homes, Inc. v. Welch Assocs.*, 793 S.W.2d 660, 666 n. 9 (Tex.1990); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L.REV. 361 (1960). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *Orozco v. Sander*, 824 S.W.2d 555, 556 (Tex.1992). When we sustain a "no evidence" point, it is our duty to render judgment for the appellant because that is the judgment the trial court should have rendered. *See* TEX.R.APP.P. 80(b) and 81(b); *Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176 (Tex.1986); *National Life & Accident Ins. Co. v. Blagg*, 438 S.W.2d 905, 909 (Tex. 1969).

### Application to the Case at Bar

■ At the time of the present case, to recover under the DTPA, Mason must have established: (1) that he was a consumer;[2] (2) that Wheaton engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the damages he is complaining of. *See* TEX.BUS. & COM. CODE ANN. § 17.50(a)(1) (Vernon 1987);[3] *Doe v. Boys Clubs of Greater Dallas, Inc.* 907 S.W.2d 472, 478 (Tex.1995). Assuming with-

---

2. Whether or not a party is a consumer is typically a question of law for the trial court, unless some elements are in dispute. *3Z Corp. v. Stewart Title Guar. Co.*, 851 S.W.2d 933, 937 (Tex. App.—Beaumont 1993, writ denied); *Luker v. Arnold*, 843 S.W.2d 108, 111 (Tex.App.—Fort Worth 1992, no writ). We question whether Mason ever established that he was a consumer of Wheaton's services. A plaintiff establishes his consumer status by his relationship to a transaction and not by a contractual relationship with the defendant. This transactional relationship encompasses all the parties who seek to enjoy the benefits of the transaction. *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707 (Tex.1983); *Dewitt v. Prudential Ins. Co. of Am.*, 717 S.W.2d 414, 418 (Tex.App.—Houston [14th Dist.] 1986, no writ). In this case, at the least it would be a factual question for the jury to decide whether Wheaton sought to enjoy the benefits of the transaction between Mason and Absolute De-Lux. *See, e.g., Flenniken*, 661 S.W.2d at 707; *Luker*, 843 S.W.2d at 111–12; *Taylor v. Burk*, 722 S.W.2d 226, 228–29 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.); *Dewitt*, 717 S.W.2d at 418; *Mytel Int'l Inc. v. Turbo Refrigerating Co.*, 689 S.W.2d 315, 318 (Tex.App.—Fort Worth 1985, no writ). Therefore, it was incumbent upon Mason to secure a favorable finding from the jury on this element of his consumer status. Nevertheless, Wheaton did not preserve this issue for determination on appeal. TEX.R.APP.P. 74.

3. Section 17.50(a) was amended in 1995 by adding a requirement that a consumer prove he relied on the false, misleading, or deceptive practice to his detriment. TEX.BUS. & COM.CODE ANN. § 17.50(a) (Vernon Supp.1996).

out deciding that the jury correctly determined that Wheaton engaged in any false, misleading or deceptive acts enumerated in section 17.46(b), the inquiry becomes whether such conduct was the producing cause of Mason's injuries.

■■■ In any cause of action, whether grounded in tort, contract, or a hybrid of the two, there can be no recovery of damages by an aggrieved party against another unless the injuries or damages were caused by the other's actions. The fact that a person was injured, for whatever reason, does not give rise to any assurance that compensation for those injuries will be recovered. . Though by different standards, according to the requirements of applicable law, "causation" is always the essential element to attribute fault for one's injuries to another. For a plaintiff the least onerous test is that of "producing cause." Although the DTPA has dispensed with many of the barriers to recovery that exist for common-law causes of action, a plaintiff seeking recovery under the DTPA must still show that the defendant's deceptive practice was the producing cause of his damages.

A producing cause is "an efficient, exciting, or contributing cause, which in a natural sequence, produced injuries or damages complained of, if any." *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995); *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 182 (Tex.1995). Sometimes referred to as "factual" causation, this standard lacks the element of "foreseeability" that is embraced by the standard of proximate causation. *Riojas v. Lone Star Gas Co.*, 637 S.W.2d 956, 959 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.). However, common to both proximate and producing cause is causation in fact, including the requirement that the defendant's conduct be a substantial factor in bringing about the plaintiff's injuries. *Union Pump Co.*, 898 S.W.2d at 775.

■■■ At some point in the causal chain, the defendant's conduct may be too remotely connected with the plaintiff's injury to constitute legal causation. *Id.* The connection between the defendant and the plaintiff's injuries simply may be too attenuated to con-

stitute legal cause. Legal cause is not established if the defendant's conduct does no more than furnish the condition that makes the plaintiff's injury possible. *Id.* This principle applies equally to both proximate and producing cause. *Id.* Even under the producing cause standard, therefore, there remain lines to be drawn in extraordinary fact situations. *Riojas,* 637 S.W.2d at 959. These lines are a reflection of policy-based considerations recognizing there are situations when the happenstance of place and time is too attenuated from the defendant's conduct for liability to be imposed.

This court's decision in *Riojas* is instructive on this point. In *Riojas,* the gas company shut off the plaintiffs' gas supply that was used to heat their home. In order to keep warm, the plaintiffs brought charcoal into their house to burn for heat and were injured by carbon monoxide gas produced by the burning charcoal. The trial court granted the gas company's motion for summary judgment on the basis that the gas company's termination of the gas supply had no causal connection with the damages suffered by the plaintiffs by their inhalation of the carbon monoxide. In affirming the trial court, this court noted that the act of the plaintiffs in bringing an alternative heat source (the charcoal) into their house, the burning of which produced the gas, was sufficient to break the causal connection between the gas company's withdrawal of the primary heat source (the gas) and the plaintiffs' injuries. *Id.* at 960.

In *Doe v. Boys Clubs of Greater Dallas, Inc.,* a case involving a Boys Club employee who sexually abused several children, the Amarillo Court of Appeals held that the Boys Club was not liable for misrepresenting that it investigated its volunteer employees, when it in fact did not. 868 S.W.2d 942, 955 (Tex.App.—Amarillo 1994), *aff'd,* 907 S.W.2d 472 (Tex.1995). There, the court followed the same analysis in finding an intervening cause to break the causal connection between the defendant's misrepresentation and the injuries complained of. *Id.* In affirming, the Texas Supreme Court pointed out that the misrepresentation at most furnished an attenuated condition that made the injury possible. *Doe,* 907 S.W.2d at 482.

Illustrative of the considerations present in the case at bar, Justice Cornyn's concurrence in *Union Pump*, where he reexamined the development of the principles of causation, included the following quotation from Prosser and Keeton:

In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would "set society on edge and fill the courts with endless litigation." As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy.

*Union Pump*, 898 S.W.2d at 783 (Cornyn, J., concurring). We agree with Justice Cornyn that this discussion can be usefully applied to producing cause as well as to proximate cause. *See id.*

In the present case, we hold that the criminal act of Michael Mullinax exacting his vicious revenge on Mason seven days after being terminated from Absolute De–Lux and eleven days after moving Mason was an intervening cause sufficient to break the chain of causation between Wheaton's misrepresentations, if any, and Mason's personal injuries. Under these facts, Wheaton's false, misleading, or deceptive acts, if any, certainly could not have naturally caused the personal injuries to Mason without the presence of Mullinax's criminal conduct. Simply, Mullinax's criminal act broke the causal sequence and itself became the cause of the injuries complained of. As in *Doe*, Wheaton's conduct at most furnished an attenuated condition that made the injury possible. *See id.* (citing *Union Pump*, 898 S.W.2d at 776 and *Bell v. Campbell*, 434 S.W.2d 117, 120 (Tex.1968)) (holding that what "created the condition" that makes the injury possible is not the factual cause as a matter of law).

Therefore, a vital fact of Mason's DTPA claim could not, as a matter of law, be proved. Accordingly, there was no evidence to support the jury's answer that Wheaton's conduct was the producing cause of Mason's injuries. Wheaton's point of error three is sustained.

## THE NEGLIGENCE CLAIM

Although we have sustained Wheaton's point of error on DTPA liability, we must nonetheless inquire whether the trial court's judgment can be affirmed upon either of the two alternative theories submitted to the jury—negligence and agency liability. We first address Wheaton's liability under a negligence theory.

■■■ The common-law doctrine of negligence consists of three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987). Before there can be a cause of action for negligence, the court must determine that the defendant had a recognized legal duty or obligation to the plaintiff. *Way v. Boy Scouts of America*, 856 S.W.2d 230, 233 (Tex.App.—Dallas 1993, writ denied). Wheaton's first point of error asserts that the trial court erred in not ruling that Wheaton owed no duty to Mason.

■■■ A duty represents a legally enforceable obligation to conform to a particular standard of conduct. *Id.* The existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Greater Houston Transp. Co.*, 801 S.W.2d at 525; *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1983). To determine whether a duty exists, we apply a risk-utility balancing test. We consider several interrelated factors, including the risk, foreseeability and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendants. *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex.1994); *Way*, 856 S.W.2d at 234.

■■■ In conducting our analysis, we emphasize that the surrounding facts of this

occurrence include that Mason moved locally from one apartment to another within the same complex. Also, Wheaton has no authority to perform intrastate or local moves and would be subject to regulatory sanctions if it were to do so. When performing interstate moves, Wheaton's local agents provide Wheaton with helpers if available at the time needed. Wheaton's agents are free to perform intrastate and local moves on their own, provided they have the appropriate regulatory permits, but any such moves are separate from Wheaton's interstate business and are done without Wheaton's involvement. Wheaton received no money or compensation from any intrastate or local moves conducted by Absolute De–Lux, including Mason's local move. When Absolute De–Lux provided helpers to Wheaton for interstate moves, the helpers were paid directly by Wheaton, not by Absolute De–Lux.

Mason primarily relies upon the North Dakota Supreme Court decision in *McLean v. Kirby Co.*, 490 N.W.2d 229 (N.D. 1992), to establish a duty owed to him by Wheaton because of the peculiar and foreseeable risk of harm of placing an employee in someone's home if precautions are not taken in selecting the employee. *See id.* at 235. In *McLean*, the Kirby Company hired an independent contractor to be a distributor of Kirby vacuum cleaners. The distributor hired a felon to be a door-to-door salesman of Kirby vacuums. While on a sales call, the salesman raped a customer. While we agree that an employer has a duty to exercise reasonable care for the protection of a resident to employ only those who, so far as can be reasonably ascertained, pose no threat to the resident, the case at bar does not present the same situation as *McLean*. *See id.* at 237. A duty was imposed in *McLean* because the felon employee was connected to Kirby Company directly; that is, although technically employed by an independent contractor, he was selling Kirby's products on behalf of Kirby. *Id.* at 236. If Mason had sought to move interstate, a situation similar to *McLean* would arise; however, it is clear that Mason's purely local move did not, and could not, connect Michael Mullinax as an employee of Wheaton. As a general rule, a defendant has no duty to prevent the criminal acts of a third party who does not act under the defendant's control or supervision. *Barefield v. City of Houston*, 846 S.W.2d 399, 403 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

Although it may have been foreseeable for Lux, as Absolute De–Lux Movers, that it was an unreasonable risk to allow a person like Mullinax into Mason's home, we must consider foreseeability in determining any duty in relation to Wheaton differently. The appropriate inquiry is whether it is reasonable to require Wheaton to foresee and police its local agent to ensure there is no unreasonable risk to the local customers by the agent hiring a person like Mullinax and sending him into a customer's home on a purely local move, which is actually the exercise of the agent's separate business that Wheaton cannot legally participate in. It is this inquiry that demonstrates the proper risk-utility balancing test and appropriately considers the magnitude of requiring Wheaton to guard against the injury and the consequences of placing such a burden on Wheaton. Simply, the presence of any duty in this case must be determined from the facts of *this* case. We cannot impose a duty upon Wheaton based upon the possibility that Lux might hire a Mullinax and send him into a home during an interstate move. That is not the question presented by the facts of this case.

Accordingly, under the facts presented in this case, we hold that Wheaton owed no duty to Mason and cannot be held liable for Mason's injuries under a negligence theory. Wheaton's point of error one is sustained. Having sustained Wheaton's first point of error, we need not address Wheaton's second point of error regarding proximate cause.

## THE VICARIOUS LIABILITY CLAIM

We now address the second alternative theory of liability on which the trial court's judgment could be affirmed—vicarious liability based on an agency relationship.

In points of error four through nine, Wheaton complains about the trial court's submission of jury question number eight, which reads in pertinent part:

*Question No. 8:*

Was David L. Lux the agent of Wheaton Van Lines, Inc., with regard to:

a. the conduct, if any, which you found to be negligence in Question No. 1.

Answer "Yes" or "No" /s/ Yes

b. the conduct, if any, which you have found to be false, misleading or deceptive in Question No. 3.

Answer "Yes" or "No" /s/ Yes

You are instructed that an agent's authority is presumed to be co-extensive with the business entrusted to his care. He may perform such acts as are necessary and proper to accomplish the purpose for which the agency was created.

The court included further instructions on actual and apparent authority.

■■■ Wheaton complains that this question improperly submitted a question of law to the jury. Additionally, Wheaton argues that it was error for the trial court to refuse to submit its proposed question concerning Lux's authority, and that the jury's answer to this question cannot provide a basis for the judgment because the jury failed to find Lux acted within the scope of his authority as an agent for Wheaton. Further, Wheaton asserts that the evidence was legally and factually insufficient to support the jury's answers. It was undisputed that an agency agreement existed between Wheaton and Lux. We will, therefore, assume without deciding that the question asked the jury to make a fact determination. We will also assume without deciding that, although not artfully drafted, the question encompassed Lux's authority and that the question also instructed the jury on the agent acting within the scope of the agency relationship at the time of the negligence or at the time of the false, misleading, or deceptive acts. Under those assumptions, the jury answered that Lux was acting within the scope of his agency with Wheaton when he committed negligence in hiring Mullinax, as well as when he

violated the DTPA. The inquiry for this court then becomes whether the evidence was sufficient to support the jury's answer, which relates only to Wheaton's seventh, eighth, and ninth points of error.

■■■ Again, in reviewing a legal sufficiency point, or "no evidence" point, we must consider only the evidence and inferences, when viewed in their most favorable light, that tend to support the verdict, and disregard all evidence and inferences to the contrary. *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex.1990). If there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *Id.* Under a factual sufficiency challenge, we must examine all of the evidence and determine whether the evidence is so weak that the verdict is clearly wrong and unjust. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986).

■■■ Generally, an agent's authority is presumed to be coextensive with the business entrusted to his care. *Hedley Feedlot, Inc. v. Weatherly Trust*, 855 S.W.2d 826, 837 (Tex.App.—Amarillo 1993, writ denied). The agent is limited in his authority to such contracts and acts as are incident to the management of the particular business with which he is entrusted. *Id.* Where an agent is acting for the principal, the principal is liable for the agent's acts *within the scope of the agency. See id.*[4]

The scope of the written agency agreement between Wheaton and Absolute De–Lux Movers unambiguously encompassed the movement of household goods in interstate commerce. Evidence adduced at trial established that Wheaton's agents are to provide Wheaton with helpers to load the truck if helpers are available at the time needed. Therefore, Mason had the burden of producing sufficient evidence that Lux's negligent hiring of Michael Mullinax was within the

---

**4.** The dissent would hold Wheaton liable based upon the fact that an agency relationship existed. We agree that an agency relationship did exist, however, our analysis addresses the second element required to hold the principal liable for his agent's negligence; that is, that the negligent act was performed *within the scope of the agency. See Hedley Feedlot, Inc. v. Weatherly Trust*, 855

S.W.2d 826, 837 (Tex.App.—Amarillo 1993, writ denied); *Jorgensen v. Stuart Place Water Supply Corp.*, 676 S.W.2d 191, 194 (Tex.App.—Corpus Christi 1984, no writ); *Miller v. Towne Services, Inc.*, 665 S.W.2d 143, 145 (Tex.App.—Houston [1st Dist.] 1983, no writ); *Geders v. Aircraft Engine & Accessory Co. Inc.*, 599 S.W.2d 646, 650 (Tex.Civ.App.—Dallas 1980, no writ).

scope of Lux's agency with Wheaton; that is, that Lux hired Mullinax in relation to his obligation to provide Wheaton with helpers on interstate moves. The only evidence adduced at trial in this regard established that not all of the helpers were on call for Wheaton, but only those helpers with enough knowledge to load an interstate truck. Testimony also established that on some days Lux had no helpers available for Wheaton to use. Mason argues that, because the jury found that Lux was negligent in hiring Mullinax, Wheaton is liable for the acts of its agent because it expressly required its agent to provide helpers. There is, however, a complete lack of evidence that Mullinax was hired as a helper within the scope of Lux's agency with Wheaton. The evidence adduced at trial, even in the light most favorable to the verdict and disregarding inferences to the contrary, amounts to no more than a scintilla of evidence that Mullinax was hired as a helper on or for interstate moves as an agent for Wheaton. The evidence was legally insufficient and cannot support the jury's answer regarding Wheaton's liability for its agent negligently hiring Mullinax. Wheaton's seventh and eighth points of error are sustained.

Because we have held that any false, misleading, or deceptive acts found to be violations of the DTPA were not the producing cause of Mason's injuries as a matter of law, there is likewise no evidence to support the jury's answer that Lux was Wheaton's agent in making such misrepresentations. Wheaton's ninth point of error is sustained.

## CONCLUSION

We hold that the criminal act of Michael Mullinax was an intervening cause sufficient to break the causal chain between any false, misleading, and deceptive conduct and the injuries Mason sustained as a result of Mullinax's attack. As a matter of law, therefore, there was no evidence to support the jury's determination that Wheaton's conduct was the producing cause of Mason's personal injuries. We also hold that, under the facts of this case, Wheaton owed no duty to Mason

that would subject Wheaton to liability for Mason's injuries under a direct negligence theory. Finally, we hold that there was no evidence to support the jury's answers on Wheaton's liability based on the principal-agent relationship between Wheaton and Lux.

Because we have found that the judgment of the trial court cannot, as a matter of law, be supported on any of the three theories submitted to the jury, we need not address Wheaton's remaining points of error concerning damages, attorneys' fees, and prejudgment interest. Accordingly, we reverse the judgment of the trial court and render judgment that Mason take nothing in his suit against Wheaton Van Lines, Inc. See TEX. R.APP.P. 81(c).

DAUPHINOT, J., filed a dissenting opinion in which RICHARDS, J. (nonpanel), joins.

DAUPHINOT, Justice, dissenting.

Because I find that the evidence was factually sufficient to support the jury's affirmative finding on question 8(a) that Lux was the agent of Wheaton for the negligent hiring of Mullinax, I respectfully dissent from the majority's well-written opinion. I would find that Wheaton owed a duty to Mason and, then, address the question of whether there was an intervening cause.

The jury answered that Lux was acting as the agent for Wheaton, after being appropriately instructed on both actual and apparent authority. In Texas, the doctrine of apparent authority is based on estoppel.[1] A third party seeking to charge a principal through the apparent authority of an agent must prove such conduct on the part of the principal as would lead a reasonably prudent person, using diligence and discretion, to believe that the agent has the authority she purports to exercise.[2] An agent acting within the scope of her apparent authority binds a prin-

---

1. *Ames v. Great S. Bank,* 672 S.W.2d 447, 450 (Tex.1984).

2. *Id.*

cipal as though the principal herself had performed the action taken.[3]

Wheaton and Absolute De–Lux Movers appeared to Mason to be the same company. Wheaton supplied to Lux its logo, its Good Housekeeping seal of approval, its slogan that it is the "Official Movers for Steinway & Sons Pianos," and the authority to advertise and contract for Wheaton. The advertisement relied on by Mason expressly offered to perform both local or long distance moves. Even the employees who did the Mason move appeared to be confused about the true identity of their employer. Mason testified at trial that when he asked the movers if they were associated with Wheaton, one of the movers responded that they did local moves for Wheaton. Based on the advertisement, the telephone greeting Mason received that indicated that he had contacted Wheaton, and the movers' statements, it is difficult to fathom how Mason was supposed to determine that he was not dealing with Wheaton.

There can be no question but that Wheaton benefits greatly from its agency relationship with Lux and other local movers. It is through these relationships that Wheaton is able to spread its name and reputation across the country. I believe that there was sufficient evidence at trial to support the jury's finding that an agency relationship existed between Wheaton and Lux under the doctrine of apparent authority and that, therefore, Wheaton should be bound by the negligent act of Lux. I further question whether *McLean v. Kirby Co.*[4] is truly distinguishable from the case before us on the issue of the duty owed to Mason for the negligent hiring of Mullinax. The majority concluded that Wheaton owed absolutely no duty and, thus, could not be directly liable for the negligence. I find, however, that the only thing that separates this case from the fact scenario presented in *McLean* is the existence of what, from Mason's viewpoint, amounted to a

secret agreement between Wheaton and Lux that specified that Lux was solely responsible for local moves. The consuming public, Mason included, is never let in on this secret and, because of Lux's apparent authority to act for Wheaton, is led to believe that they are dealing with the nationally-recognized Wheaton. In fact, in all his dealings with Absolute De–Lux, Mason was never informed that he had not, because of the fact that his move was local, contracted with Wheaton.

The fact scenario before us is very analogous to cases where a hospital that holds itself out to the public to be full-service is sued for the negligence of a doctor who turns out to be an independent contractor of that hospital and not an actual employee.[5] In those cases, the courts have had no difficulty holding a hospital liable despite the existence of a contract between the independent contractor and the hospital specifically negating any hospital liability for the acts of the independent contractor.[6] In analyzing this situation, the courts have focused on the fact that the plaintiffs relied on the reputation of the hospitals in selecting them for treatment, and that the plaintiffs had no knowledge that the treating physicians were not actually employees of the hospital in question because of the appearance of employment created by the hospital.[7]

The same kind of public policy demands that are presented by those cases are present when a company is in the moving business and, therefore, necessarily in the business of sending its representatives into customer's homes. In this case, Mullinax never would have been in Mason's home if it was not for Wheaton. The testimony at trial established that Mason relied on the reputation of Wheaton in selecting a mover and, also, that, to the unknowing consumer,

---

**3.** *Id.*

**4.** 490 N.W.2d 229 (N.D.1992).

**5.** *See Brownsville Medical Ctr. v. Gracia,* 704 S.W.2d 68 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *Smith v. Baptist Memorial Hosp. Sys.,* 720 S.W.2d 618 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.).

**6.** *See Brownsville Medical Ctr.,* 704 S.W.2d at 75; *Smith,* 720 S.W.2d at 625.

**7.** *See Brownsville Medical Ctr.,* 704 S.W.2d at 75; *Smith,* 720 S.W.2d at 625.

the movers appeared to be Wheaton's employees.

For the above stated reasons, I respectfully dissent from the majority's opinion.

RICHARDS, J. (nonpanel), joins in dissent.