Joe FERGUSON d/b/a Joe Ferguson Water Well Company, Appellant,

v.

RED ARROW FREIGHT LINES, Appellee.

No. 1364.

Court of Civil Appeals of Texas, Corpus Christi.

March 29, 1979.

Larkin T. Thedford, Edna, for appellant.

O. F. Jones, Jones & Lazor, Victoria, for appellee.

## OPINION

BISSETT, Justice.

In this suit brought by Joe Ferguson, d/b/a Joe Ferguson Water Well Company, against Red Arrow Freight Lines to recover the cost of repairs to an air compressor delivered by defendant to plaintiff, the trial court, after a non-jury trial, rendered judgment that plaintiff recover $955.00, a sum representing the reasonable cost of repairing external damage to the compressor. Plaintiff has appealed.

The only issue on appeal is whether the trial court should also have awarded the plaintiff the reasonable cost of repairing certain internal damage to the compressor. We hold that the lower court correctly limited the judgment for the plaintiff to the cost of repairing external damage ($955.00), and, therefore, affirm the judgment.

Defendant is a common motor carrier under the laws of Texas. It owns and operates a truck line, and delivers freight to Edna, Texas, among other places. When the compressor was delivered to the loading dock in Edna, Texas, its point of destination, it showed visible signs of external damage, including a broken oil gauge. Plaintiff, upon observing the external damage, expressly refused to accept the compressor. The driver of defendant's truck then went across the street, and, according to plaintiff's statement, made a phone call to his superior in either San Antonio or Victoria. Plaintiff did not accompany the driver when he "went across the street." When he returned, plaintiff again told him he would not accept the compressor until he heard it run. At this point, defendant's driver said: "Let's start it." The compressor was then started and ran for about four or five minutes. Plaintiff then accepted delivery.

The following day, a representative of defendant called on the plaintiff at his home for the purpose of inspecting the compressor. After inspection; a damage report was filled out by the representative and signed by plaintiff. This report covered only the external damage to the compressor. The next day another representative inspected the compressor and filled out a supplemental damage report, which was signed by plaintiff's son. This report also related to visible external damage. Sometime thereafter, the plaintiff was authorized by defendant's representative to have the compressor repaired. Apparently, such authorization was made before it was discovered that the compressor had sustained internal damage.

The mechanic who repaired the compressor testified that, after hearing a distinct knocking sound during a brief engagement of the compressor, he tore the engine down and found substantial internal damage. According to him, the internal damage, with the exception of the broken oil tube, was caused by running the compressor at the time of its delivery to plaintiff. He reasoned that the damage occurred because there was no oil in circulation at that time to lubricate the engine's running parts.

After the mechanic fully repaired the compressor, plaintiff presented a bill to defendant for $2,574.99, the total cost of repair. The defendant refused to pay the bill.

In his sole point of error, plaintiff contends that the trial court erred in not rendering judgment for him in the amount of $2,574.99, the total cost of repair to the compressor.

■ Findings of fact were neither requested nor filed. Thus, every reasonable presumption must be indulged in favor of the validity of the judgment rendered. *Chicago, R. I. & G. Ry. Co. v. Bell,* 168 S.W. 396 (Tex.Civ.App.—Fort Worth 1914, writ ref'd). If there is any legal theory supported by the pleadings and the evidence, which itself will support the judgment, the judgment must be affirmed. *James v. Drye,* 159 Tex. 321, 320 S.W.2d 319 (1959); *Dairy Queen Stores, Inc. v. Silva,* 552 S.W.2d 543 (Tex.Civ.App.—Corpus Christi 1977, no writ).

■ When goods are damaged in shipment, but are not totally destroyed, a consignee is ordinarily bound to accept the goods in damaged condition, and looks to the carrier for payment of the damages. In that situation, when the cost of repairs does not exceed the reasonable value of the goods prior to the damage, the reasonable cost of repair is the appropriate measure of damages. *Southwestern Motor Transport Company v. Valley Weathermakers, Inc.,* 427 S.W.2d 597 (Tex.Sup.1968). In the instant case, the compressor was not totally destroyed, and the reasonable cost to repair the same, as shown by the evidence and by plaintiff's admission in his brief, is less than its reasonable market value before it was damaged.

■ A carrier is strictly liable, with certain exceptions, at common law for any damage to goods while in transit. *Missouri Pacific Railroad Co. v. Elmore & Stahl,* 368 S.W.2d 99 (Tex.Sup.1963). This common law liability ends, however, when the goods are carried to the point of consignment and are there delivered to the consignee. *House v. Soder,* 36 Tex. 629 (1871). After termination of its common law liability, the carrier becomes liable only as a warehouseman for any actionable negligence on its part. *Chief Freight Lines Co. v. Holiday Inns of America, Inc.,* 469 S.W.2d 413 (Tex.Civ.App.—Dallas 1971, no writ); *Trans-Cold Express, Inc. v. Hardin,* 415 S.W.2d 431 (Tex.Civ.App.—Austin 1967, no writ); *American Express Co. v. Duncan,* 193 S.W. 411 (Tex.Civ.App.—Fort Worth 1917, no writ).

■ Regarding the duties of a carrier, delivery may be actual or constructive. *American Express Co. v. Duncan,* supra. Actual delivery is accomplished when the goods are physically tendered to, or received by, an authorized person. *Ada Oil Co. v. Dunlop Tire & Rubber Corp.,* 550 S.W.2d 129 (Tex.Civ.App.—Eastland 1977, no writ); *Trans-Cold Express, Inc. v. Hardin,* supra. In this case, the air compressor was physically tendered to the plaintiff several minutes before its motor was started. Plaintiff, however, refused to accept delivery at this time, and did not accept delivery until after the motor had run for four or five minutes. There can, of course, be no actual delivery if the consignee rightfully refuses the shipment. *Missouri, K. & T. Ry. Co. of Texas v. Jenkins,* 35 Tex.Civ.App. 429, 80 S.W. 428 (1904, no writ). A consignee may rightfully refuse a shipment when the goods have become totally worthless due to injury in transit. 11 Tex.Jur.2d, Carrier, § 334 (1960). He may not, however, refuse to accept a shipment merely because of injury caused by the carrier in the absence of total or substantial destruction. *Southwestern Motor Transport Company v. Valley Weathermakers, Inc.,* supra; *Chicago, R. I. & G. Ry. Co. v. Bell,* 168 S.W. 396 (Tex.Civ.App.—Fort Worth 1914, writ ref'd). Here, it is clearly established by the evidence that the compressor was not totally destroyed at the time delivery was initially tendered to plaintiff.

■ While the record does show that defendant's truck driver, when plaintiff told him at the freight dock: "I am not accepting nothing that won't run," did say to plaintiff: "Let's start it," such statement by the driver does not, of itself, impose liability on defendant for the damage caused by the starting of the compressor. The truck driver, according to the evidence, was an employee of the defendant carrier who was authorized to drive defendant's truck, and any voluntary statements by him, or the assumption of any liability by him, unless expressly and previously authorized by defendant, or subsequently ratified by defendant, are not within the course,

scope and apparent authority of the driver, and are not imputable to the defendant, the truck driver's employer. *Big Mack Trucking Company, Inc. v. Dickerson,* 497 S.W.2d 283 (Tex.Sup.1973). "[T]he well-advised employer would generally not authorize the driver to speak in these circumstances." *Big Mack Trucking Company,* supra, at page 288.

■ It is also fundamental that an agency relationship and the extent of the agent's authority cannot be established by the statements, standing alone, of the agent. See 2 Tex.Jur.2d, Agency, § 267, and the cases cited therein. Here, there is neither pleading nor evidence that the defendant's truck driver-employee was defendant's agent.

■ The truck driver did not testify. Concerning the authority of the truck driver (a local driver), Mr. Jerry Yates, who was the freight terminal manager for defendant at its San Antonio office on the date that the compressor sustained internal damage, testified:

"Q What is the authority of a city driver, or a local driver, with regard to his conducting business with the recipient of freight in the event that freight is damaged?

A If there is visible damage the driver, you know, should be instructed to let the, you know, consignee sign for the freight and inspect it at time of delivery, and if, ah, there is, you know, anything beyond that, beyond the consignee making exceptions on the delivery receipt, the driver would have to call the terminal for further instructions."

The only statements relating to "further instructions" were made by plaintiff himself in these words:

". . . I told the truck driver I wasn't going to accept it like that. And he came over to the courthouse somewheres and called. I didn't come with him. And called Red Arrow. I don't know whether it was San Antonio or Victoria. I don't know. And he came back over there and

he said, well, there would be a fellow over there the following day, if I would accept it. And I told him I wouldn't accept it until I heard the compressor run."

Those statements do not constitute evidence that the driver was authorized by defendant to "start" the compressor.

Finding no reversible error in the record, we have no choice but to affirm the judgment of the trial court. Plaintiff's point of error is overruled.

AFFIRMED.