Elizabeth **VALDEZ** and Freddie Valdez, Individually, and as Next Friends of Freddie Valdez, Jr., Minor, Appellants,

v.

**PASADENA HEALTHCARE MANAGEMENT, INC.** and Southmore Medical Center, Ltd., d/b/a Southmore Medical Center, Appellees.

No. 14–96–01001–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 16, 1998.

John F. Phillips, Houston, Vincent L. Marable, III, Wharton, for appellants.

Richard A. Sheehy, Randall Jones, Lauren L. Beck, Houston, for appellees.

Before LEE, AMIDEI and ANDERSON, JJ.

## OPINION

LEE, Justice:

This is a medical malpractice case in which Elizabeth and Freddie Valdez sued Pasadena Healthcare Management, Inc., and Southmore Medical Center, Ltd. [collectively "Southmore"] on behalf of their infant son, Freddie Valdez, Jr., for injuries he sustained during childbirth. The trial court granted summary judgment in favor of Southmore; the Valdezes perfected this appeal. We affirm.

### Background.

On February 12, 1993, Elizabeth Valdez arrived at the delivery care unit of the Southmore Medical Center. Valdez told the admitting nurse her water had broken and asked the nurse to notify her doctor, Dr. Nasim Aziz, that she was in labor. The nurse told Valdez that Dr. Aziz was away from the hospital but that Dr. John Devine was on call and that he would deliver the baby. The nurse gave Valdez a consent-to-treat form which contained the following notice:

**INDEPENDENT STATUS OF PHYSICIANS:** I recognize that any or all physicians, residents or medical students (under the supervision of physicians and/or residents), who furnish services to me during this admission are independent contractors and are NOT AGENTS OR EMPLOYEES OF THE HOSPITAL. I understand and agree that each of the above referenced practitioners, (such as radiologists, pathologists, anesthesiologists, etc.) who render professional services to me bill and collect independently for these services. I understand that their bills will be separate and apart from the hospital's billing and collections and that the hospital may bill on the physician's behalf, but subject to the authorizations granted by me in accordance with this agreement.

Valdez signed the form and was taken into delivery. During delivery, Valdez's son sustained a permanent shoulder injury due to shoulder dystocia, a condition that occurs when a baby's shoulders are too large to pass through the mother's birth canal.

The Valdezes filed suit against Dr. Aziz for her negligent failure to diagnose their child's shoulder condition and against Dr. Devine for negligent treatment. The Valdezes also sued Southmore claiming it was vicariously liable for Dr. Devine's negligence because he was the hospital's ostensible agent. The Valdezes settled their claims against both doctors, and Southmore filed a motion for summary judgment. The trial court granted Southmore's motion, and the Valdezes filed this appeal. In one point of error, the Valdezes contend summary judgment was improper because genuine issues of material fact exist as to whether Dr. Devine was Southmore's ostensible agent.

### Standard of Review

▮ A movant for summary judgment has the burden to show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c). To be entitled to summary judgment, a defendant must either (1) conclusively negate at least one essential element of each of the plaintiff's causes of action, or (2) conclusively establish each element of an affirmative defense to each claim. *See Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1996). When a movant's summary judgment proof is sufficient to establish its entitlement to summary judgment, the non-movant may assert an affirmative defense to avoid summary judgment. *See American Petrofina, Inc. v. Allen,* 887 S.W.2d 829, 830 (Tex.1994). In such cases, the non-movant must urge the defense in its response and provide enough summary judgment proof to create a fact issue as to each element of the defense. *Id.* In reviewing an order granting summary judgment, we treat evidence favorable to the non-movant as true and indulge all reasonable inferences in the non-movant's favor. *See Specialty Retailers, Inc. v. DeMoranville,* 933 S.W.2d 490, 491 (Tex.1996).

### Analysis

▮ Generally, an employer is not liable for the negligent acts of an independent contractor. *See Clayton W. Williams, Jr., Inc. v. Olivo,* 952 S.W.2d 523, 527 (Tex.1997). In most cases, physicians are considered to be independent contractors with regard to the hospitals at which they enjoy staff privileges. *See Harris v. Galveston County,* 799 S.W.2d 766, 768 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Thus, as a general rule, a hospital is not liable for the negligence of independent physicians. *See Berel v. HCA Health Servs.,* 881 S.W.2d 21, 23 (Tex.App.—Houston [1st Dist.] 1994, writ denied); *Nicholson v. Memorial Hosp. Sys.,* 722 S.W.2d 746, 746 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Jeffcoat v. Phillips,* 534 S.W.2d 168, 173 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). In support of its motion for summary judgment, Southmore submitted the affidavit of Dennis M. Knox, the President and CEO of Southmore Medical Center. In his affidavit, Knox states that Dr. Devine "is not and has never been employed by Southmore, nor has he ever been expressly authorized to act . . . on behalf of Southmore as an agent." Knox further states that Dr. Devine "is an independent physician who has been granted privileges to practice medicine at Southmore" and "is solely responsible for deciding how or in what manner to examine patients. . . ." In

addition, Knox's affidavit indicates that Dr. Devine (1) does not have a contract or agreement with Southmore which would allow the hospital to exercise control over his practice of medicine, (2) does not receive a salary from Southmore, and (3) bills his patients directly for any care rendered to them and decides how much to charge for his services. The Valdezes did not submit any contradictory summary judgment proof, and on appeal, do not dispute that Knox's affidavit conclusively shows that Dr. Devine was an independent physician the night he delivered their child. The Valdezes do, however, maintain that summary judgment is improper in this case because a fact issue exists as to whether Dr. Devine was Southmore's ostensible agent.

■ Although a hospital is generally not liable for the negligence of an independent physician, it may be liable for that physician's negligence if the plaintiff can show the physician was acting as the hospital's ostensible agent when the negligent act occurred. *See Drennan v. Community Health Inv. Corp.*, 905 S.W.2d 811, 818–19 (Tex.App.—Amarillo 1995, writ denied). In order to defeat a defendant-hospital's motion for summary judgment based on the physician's independent contractor status, the plaintiff must submit summary judgment proof which raises a genuine issue of material fact as to each element of the plaintiff's ostensible agency claim. *Id.* at 820.[1] To establish a claim of ostensible agency, a plaintiff must show that (1) he had a reasonable belief in the agent's authority, (2) his belief was generated by some holding out by act or neglect of the principal, and (3) he was justified in relying on the representation of authority. *Id.; see also McDuff v. Chambers*, 895 S.W.2d 492, 498 (Tex.App.—Waco 1995, writ denied).

In her affidavit attached to her summary judgment response, Valdez states:

I went to Southmore Medical Center Hospital on 2/12/93 after my water broke and I was in labor. I asked for my doctor, but my doctor was not there. The nurse told me that Dr. Devine would be delivering my baby and that he was the only doctor there that delivered babies that day. The nurse put some papers in front of me to sign, which I did. I did not read any of the papers. I signed them while I was in pain. The nurse did not explain anything to me about whether Dr. Devine was an agent or an employee of the hospital. I do not understand what an agent is. I only knew at the time that I was in pain, that my baby was coming and that Dr. Devine was the only doctor who was delivering babies. I thought that he worked for the hospital.

Relying solely on her affidavit, Valdez argues a fact issue exists on each element of her ostensible agency claim. Southmore contends Valdez's affidavit fails to raise a fact issue as to the second element of ostensible agency, *i.e.*, whether, by any act or omission, the hospital held out Dr. Devine as its employee or agent. We agree with Southmore.

■ The *only* "act" the Valdezes rely upon to support their position that Southmore held out Dr. Devine as its employee is the hospital nurse's statement that Dr. Devine "would be delivering [Valdez's] baby and that he was the only doctor there that delivered babies that day." This comment, however, neither explicitly nor implicitly suggests Dr. Devine was the hospital's employee. Moreover, Valdez's own statement that "[t]he nurse did not explain anything . . . about whether Dr. Devine was an agent or an employee of the hospital" provides additional support for Southmore's claim that it did not hold out Dr. Devine as a hospital employee. The "holding out" element of the Valdezes' ostensible agency claim is further negated by Ms. Valdez's admission that she received and signed a written consent form which contained language expressly disclaiming any such relationship.[2] Given the record

---

1. In *Nicholson*, this court noted that the doctrine of ostensible agency is actually an affirmative defense to a hospital's attempt to avoid liability based on the physician's independent contractor status. *See Nicholson*, 722 S.W.2d at 749. As such, it must be pled and proved by the party asserting the defense. *Id.*

2. We recognize that Ms. Valdez states she did not read the consent form before signing it. However, a claim of ostensible agency may *only* be established through some conduct of the principal. *See, e.g., Thermo Prod. Co. v. Chilton Indep. Sch. Dist.*, 647 S.W.2d 726, 732–33 (Tex.App.—Waco 1983, writ ref'd n.r.e.); *Ferguson v. Red*

before us, we cannot conclude that Southmore did anything to lead the Valdezes to believe that Dr. Devine was the hospital's employee.

Nevertheless, the Valdezes maintain that summary judgment is improper in this case and cite two San Antonio Court of Appeals cases to support their position. *See Sampson v. Baptist Memorial Hosp. Sys.*, 940 S.W.2d 128 (Tex.App.—San Antonio 1996, writ granted); *Smith v. Baptist Hosp. Sys.*, 720 S.W.2d 618 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.). In *Smith*, the plaintiff went to the defendant-hospital's emergency room where he sought treatment for a sore throat. *See* 720 S.W.2d at 620. The plaintiff experienced an adverse reaction to the medication the emergency room physician administered, and as a result, was without oxygen for approximately five minutes, causing permanent brain damage. *Id.* The plaintiff's representatives sued the hospital, claiming the emergency room physician was the hospital's ostensible agent. The trial court granted summary judgment in favor of the hospital, and the plaintiff appealed. *Id.*

In reviewing the case, the San Antonio court noted that to establish ostensible agency "the plaintiff must have more than a mere belief that the acts were performed by one whom the plaintiff believed to be the defendant's servant." *Id.* at 624. The court further explained:

> There must be such reliance upon the manifestation as exposes the plaintiff to the negligent conduct. The rule normally applies where the plaintiff has submitted himself to the care or protection of an apparent servant in response to an invitation from the defendant to enter into such relations with such servant. A manifestation of authority constitutes an invitation to deal with such servant and to enter into

relations with him which are consistent with the apparent authority.

*Id.* (citing RESTATEMENT (SECOND) OF TORTS § 267 cmt. a (1958)).

The *Smith* court then emphasized that the summary judgment record was "replete" with evidence that showed an employment contract existed between the hospital and its emergency room physicians, patients receiving the services of its emergency room physicians were billed directly by the hospital, and a patient entering the emergency room had no way to know whether the treating physician was an independent contractor or a hospital employee. *Id.* In reversing the summary judgment, the court held:

> Sound public policy demands that when an institution calls itself a "full service hospital" and includes an emergency room as part of its facilities, that institution makes a special statement to the public when it opens its emergency room to provide emergency care for people. An agency by estoppel is established by creating the effect that the appearance that hospital's agents, not independent contractors, will provide medical care to those who enter the hospital. The appearance is what the patient observes and which he relies upon when entering a full service hospital.

*Id.* (citations omitted). The Valdezes correctly point out that in another emergency room case, the San Antonio court, relying on *Smith,* imposed a "non-delegable duty" on hospitals for the negligence of their emergency room physicians. *See, e.g., Sampson,* 940 S.W.2d at 128. The Valdezes suggest *Sampson* and *Smith* are analogous to the present case and require reversal. We disagree.

Unlike the situations in either *Smith* or *Sampson,* there is no evidence in the record to suggest that Valdez was drawn to Southmore's child delivery ward in response to any

*Arrow Freight Lines,* 580 S.W.2d 84, 88 (Tex.Civ. App.—Corpus Christi 1979, no writ) (emphasis added); *see also* RESTATEMENT (SECOND) OF TORTS § 267 cmt. a (1958) (stating that ostensible agency "normally applies where the plaintiff has submitted himself to the care or protection of an apparent servant in response to an invitation from the defendant to enter into such relations with such servant."). Thus, when determining whether a principal held out another as its agent,

the critical inquiry is whether the *principal* took some action that qualifies as a representation of agency. *See, e.g., Thermo Prod. Co.,* 647 S.W.2d at 732–33; *Ferguson,* 580 S.W.2d at 88. Because the validity of the Valdezes' ostensible agency claim turns solely upon the action (or inaction) of Southmore, Ms. Valdez's assertion that she did not read the consent form is immaterial.

invitation from the hospital. To the contrary, the record shows Valdez went to Southmore *solely* because her own physician, a doctor with whom she had a previous patient-physician relationship, instructed her to do so. Consequently, the public policy issues concerning emergency room situations raised in both *Smith* and *Sampson* are not implicated in the case at bar. Secondly, unlike *Smith*, the summary judgment record in this case conclusively shows that Southmore (1) did not have an employment contract with Dr. Devine, (2) did not have any control over Dr. Devine, and (3) did not directly bill or collect for Dr. Devine's services to his patients. In addition, unlike the defendant-hospital in *Smith*, the record shows Southmore did all that it could under the circumstances to ensure Valdez was aware Dr. Devine was not a hospital employee.[3] Finally, we have neither found, nor have the Valdezes cited, any Texas authority applying the theory of ostensible agency in the hospital setting to include physicians who are not emergency room doctors.

We believe the situation in present case is more akin to the circumstances of *Lopez v. Central Plains Reg'l Hosp.*, 859 S.W.2d 600 (Tex.App.—Amarillo 1993, no writ). In *Lopez*, the plaintiffs' infant child was born with an injury to its arm. *See id.* at 601–02. The plaintiff sued the hospital, claiming it was vicariously liable for her obstetrician's negligence in delivering her child because the doctor was the hospital's ostensible agent. *Id.* at 602. After examining the summary judgment record, the court noted the plaintiff and the doctor had an ongoing patient-physician relationship before she went to the hospital to deliver her baby, the doctor was not in a contractual relationship with the hospital, the doctor was an independent contractor who merely had staff privileges, and the hospital did not bill or collect for the doctor's services. *Id.* at 605. Based on these facts, the court found that no genuine issue of material fact existed with regard to the plaintiffs' ostensible agency claim. *Id.; see also Nicholson*, 722 S.W.2d at 746 (finding that doctor was an independent contractor where no contractual relationship existed between him and the hospital, doctor billed his clients directly and received no remuneration from the hospital).

Similarly, in the present case, Southmore's summary judgment proof conclusively demonstrates that Dr. Devine did not have a written employment contract with Southmore, that he billed patients directly for his services, and that he only had staff privileges at Southmore. Southmore's proof also conclusively establishes that Dr. Devine does not maintain an office at Southmore and is not scheduled to work any set hours at the hospital. Most significantly, the Valdezes do not dispute that prior to being admitted into the hospital, Ms. Valdez received and signed a written notice expressly stating that her attending physician, Dr. Devine, was an independent contractor. The language appearing on the consent form is clear and conspicuous and was sufficient to provide Valdez with adequate notice that Dr. Devine was neither an employee nor an agent of the hospital.

### Conclusion

Because the Valdezes' summary judgment proof does not raise a fact issue as to whether Southmore held out Dr. Devine as its employee or agent, the trial court did not err in granting summary judgement in favor of

---

3. We recognize that in *Sampson,* as in the present case, the hospital gave the plaintiff (and the plaintiff had signed) a written consent form disclaiming any liability for treating physicians who were independent contractors and not the agent or employee of the hospital. *See id.* at 133. The *Sampson* court found that "the nature of the circumstances under which [the plaintiff] sought emergency room services coupled with her statement that she did not recall signing the consent forms were sufficient to raise a question of fact as to whether [the plaintiff] was in a position to understand the terms of the forms." *Id.* at 134. We do find the court's logic puzzling, particular- ly given its recognition that the "holding out" requirement of ostensible agency cannot be satisfied "where the hospital provides notice to the patient, thereby eliminating the implication that the physician is an employee." *Id.* at 133 (citing *Stewart v. Midani,* 525 F.Supp. 843, 853 (N.D.Ga.1981), *Pamperin v. Trinity Memorial Hosp.,* 144 Wis.2d 188, 423 N.W.2d 848, 856 (1988), & *Paintsville Hosp. Co. v. Rose,* 683 S.W.2d 255, 256 (Ky.1985)). In any event, without either agreeing or disagreeing with the court's implicit finding that a signed waiver is ineffective in an emergency room context, such is not the context presented here.

Southmore. Accordingly, the judgment of the trial court is affirmed.

AMIDEI, Justice, dissenting.

I respectfully dissent.

The sole issue on this appeal is whether appellants' summary judgment evidence raised a material fact issue as to their malpractice claim that the hospital was liable for Dr. Devine's negligence on the theory of ostensible agency. "Ostensible agency," also known as agency by estoppel or apparent agency, does not depend upon an express appointment or actual authority but arises from the words, attitude, conduct, and knowledge of the principal, not the agent. *McDuff v. Chambers*, 895 S.W.2d 492, 498 (Tex. App.—Waco, writ denied). In fact, an ostensible agent is not really an agent at all, but estoppel prevents the "principal" from denying the agency. *Id.* Elements of ostensible agency are: (1) the third party (Elizabeth) must have a reasonable belief in the agent's (Dr. Devine's) authority; (2) the belief must be generated by some holding out by act or neglect of the principal (the hospital); and (3) the third party (Elizabeth) must justifiably rely on the representation of authority. *Id.*

Appellants had the burden of producing summary judgment evidence sufficient to raise an issue of fact as to each element of their ostensible agency claim in order to successfully oppose summary judgment. *Brownlee*, 665 S.W.2d at 112; *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d at 678–79; *Smith v. Baptist Memorial Hosp. System*, 720 S.W.2d 618, 622–23 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.)

In *Smith v. Baptist Memorial Hosp. System*, the court of appeals stated:

RESTATEMENT (SECOND) OF AGENCY § 267 (1958) states the rule of "apparent" or "ostensible" agency:

One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care of skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

*Smith*, 720 S.W.2d at 624.

The *Smith* court further stated: "Comment (a) to the foregoing section makes it clear that a plaintiff must have more than a mere belief that the acts were performed by one whom the plaintiff believed to be the defendant's servant." *Id.* The RESTATEMENT (SECOND) OF TORTS § 267 cmt. a (1958) states:

There must be such reliance upon the manifestation as exposes the plaintiff to the negligent conduct. The rule normally applies where the plaintiff has submitted himself to the care or protection of an apparent servant in response to an invitation from the defendant to enter into such relations with such servant. A manifestation of authority constitutes an invitation to deal with such servant and to enter into relations with him which are consistent with the apparent authority.

*Id.* at 624.

The *Smith* court concluded:

Sound public policy demands that when an institution calls itself a "full service hospital" and includes an emergency room as part of its facilities, that institution makes a special statement to the public when it opens its emergency room to provide emergency care for people. *Hannola v. City of Lakewood*, 68 Ohio App.2d 61, 426 N.E.2d 1187, 1190 (1980). An agency by estoppel is established by creating the effect that the appearance that hospital's agents, not independent contractors, will provide medical care to those who enter the hospital. *Id.* 426 N.E.2d at 1190. The appearance is what the patient observes and which he relies upon when entering a full-service hospital.

*Id.* at 625.

The *Smith* court reasoned: "[a] person who is ill or injured and needs treatment will turn to his local hospital to provide it regardless of prior notice that the physicians are independent contractors. After all, the injured or ill person chooses BMHS [the hospital] and not the EPA [the treating doctors] for treatment." *Id.* at 625.

In *Sampson v. Baptist Memorial Hosp. System*, 940 S.W.2d 128, 133 (Tex.App.—San Antonio 1996, writ granted), the court of appeals noted that courts in other jurisdictions generally imply the "holding out" requirement from the circumstances where the hospital offers emergency services. *Id.* at 133 (citing *Pamperin v. Trinity Memorial Hosp.*, 144 Wis.2d 188, 423 N.W.2d 848, 856–57 (1988); *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 256 (Ky.1985)). The *Sampson* court noted, however, "that a different result may follow where the hospital provides notice to the patient, thereby eliminating the implication that the physician is an employee." *Id.* at 133. In *Sampson*, the hospital had signs in the emergency room regarding the independent status of emergency room physicians but Sampson, the patient-plaintiff, stated she did not see any signs. The court found no evidence was presented by the hospital regarding the number or conspicuousness of the signs and therefore a question of fact was raised as to whether the signs were sufficient notice. *Id.* at 134. In *Sampson*, the patient had also signed consent forms disclaiming any liability for treating physicians who were independent contractors and not the agent, servant or employee of the hospital. *Id.* at 133 n. 4. The *Sampson* court found "the nature of the circumstances under which Sampson sought emergency room services coupled with her statement that she did not recall signing the consent forms were sufficient to raise a question of fact as to whether Sampson was in a position to understand the terms of the forms." *Id.* at 134 citing *Paramount Nat. Life Ins. Co. v. Williams*, 772 S.W.2d 255, 262 (Tex.App.—Houston [14th Dist.] 1989, writ denied).

In *Beeck v. Tucson General Hospital*, 18 Ariz.App. 165, 500 P.2d 1153, 1159 (1972), the court rejected the *contention* that a hospital should not be held liable for the alleged malpractice of a radiologist because the patient had signed a document which stated that the radiologist was an independent contractor and that the hospital was not liable for his acts or omissions. The *Beeck* court explained that the patient had difficulty understanding English and that the clause reciting the radiologist to be an independent contractor could have no effect unless he was actually an independent contractor. *Id.* at 1159. *See also* John D. Hodson, Annotation, *Liability of Hospital or Sanitarium for Negligence of Physician or Surgeon*, 51 A.L.R.4th 235, 352–56 (1987).

The pertinent portion of the hospital consent form is set out above in the majority opinion. The hospital submitted their consent form purporting to give notice that any physician who furnished services was not an agent or employee of the hospital and the physicians were independent contractors. The form further notifies the patient that the physician may bill the patient separately. The form is a printed form bearing the heading of the hospital, to wit, "Southmore Medical Center." The form was proven as a business record of the hospital by the affidavit of Myrna Anderson, Director of Medical Records at Southmore Medical Center. In her affidavit, Elizabeth stated: (1) she was in pain when she signed the papers and did not read any of the papers; (2) she was not told that the doctors were not employees; (3) her personal doctor was not available and she had no choice as to which doctor would treat her; (4) she was told Dr. Devine was the only doctor that delivered babies that day; and (5) she believed Dr. Devine worked for the hospital. The hospital did not controvert Elizabeth's statement.

Elizabeth stated she was in labor and in pain and did not read the consent forms and was not told by the nurse that Dr. Devine was not an employee of the hospital. In *Paramount Nat. Life Ins. Co. v. Williams,*, 772 S.W.2d at 262, cited in this dissenting opinion, this court held a disclaimer in a document was insufficient to negate the apparent authority with which an insurance company had clothed its agent. This court noted that it was unreasonable to expect a sixty-four year old uneducated woman to understand the limitation on the agent's authority in that instance. *Id.*

In *Clark v. Southview Hospital & Family Health Ctr.*, 68 Ohio St.3d 435, 628 N.E.2d 46 (1994), the court stated:

The plaintiff, who by definition is injured and under stress, is relying upon the hospital to provide the services that the hospi-

tal has held out that it can provide. The plaintiff's reliance upon the hospital's competence has been demonstrated by her walking (or being wheeled) into the emergency room. Simply informing her that some doctors and staff have a different technical relationship with the hospital than the one she expected does not lessen the reasonableness of her reliance upon the hospital. Even if the patient understood the difference between an employee and an independent-contractor relationship, informing her of the nature of the relationship after she arrives is too late. The purpose of any notice requirement is to impart knowledge sufficient to enable the plaintiff to exercise an informed choice.

*Id.* at 54 n. 1 (cited in part in *Sampson,* 940 S.W.2d at 135).

Similarly, I would find that the nature of the circumstances under which Elizabeth sought emergency services coupled with her statement that she did not read the consent forms were sufficient to raise a question of fact as to whether Elizabeth was in a position to comprehend the terms of the hospital forms. *See also Beeck v. Tucson Gen. Hosp.,* 500 P.2d at 1159; *Capan v. Divine Providence Hosp.,* 287 Pa.Super. 364, 430 A.2d 647, 649 (1980) (stating "It would be absurd to require ... a patient to ... inquire of each person who treated [the patient] whether he is an employee of the hospital or an independent contractor").

In order to defeat appellees' motion for summary judgment, Elizabeth was required to produce sufficient summary judgment evidence to raise an issue of fact as to each element of her claim of ostensible agency. Elizabeth had to raise a fact issue that: (1) she had a reasonable belief in Dr. Devine's authority; (2) her belief must have been generated by some holding out by act or neglect of the hospital; and (3) she must have justifiably relied on the representation of authority. *Lopez v. Central Plains Regional Hosp.,* 859 S.W.2d 600, 605 (Tex. App.—Amarillo 1993, no writ). Elizabeth testified she was in pain, that her baby was coming, and she was told by the nurse that Dr. Devine was the only doctor who was delivering babies, and she thought he worked for the hospital. The hospital did not controvert this statement, therefore, the summary judgment evidence was sufficient to raise an issue of fact as to whether Elizabeth had a reasonable belief that Dr. Devine, as the agent of the hospital, had authority. The fact that the nurse *told her* Dr. Devine was the only doctor that could deliver her baby, which was not controverted by the hospital, raised a fact issue of some "holding out by act or neglect of the [ostensible] principal." Elizabeth was in labor had no choice under the circumstances as to a doctor or another hospital to tend to her emergency situation. Elizabeth presented a fact issue that she "justifiably relied on the representation of authority" by the hospital. Elizabeth raised material issues of fact on all the elements of ostensible agency of Dr. Devine and the vicarious liability of the hospital. I would sustain appellants' point of error, reverse the judgment of the trial court, and remand this case for trial.