COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.  2-05-080-CV

 

RACHEL CASADOS, INDIVIDUALLY AND                               APPELLANTS

AS
REPRESENTATIVE OF THE ESTATE                              AND APPELLEES

OF
LAWRENCE CASADOS, DECEASED, AND

ROSEMARY
SULLIVAN, ANNETTE VELASQUEZ, 

MICHAEL
CASADOS, LARRY CASADOS, 

DIANE
RIVERA, AND LINDA K. COLE, AS 

NATURAL
BIOLOGICAL ADULT CHILDREN 

OF
LAWRENCE CASADOS, DECEASED

 

                                                   V.

 

HARRIS METHODIST H-E-B                                               APPELLEE AND

APPELLANT

 

                                              ------------

 

           FROM
THE 141ST DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.                  
Introduction








Lawrence Casados (Athe
decedent@) died
following surgery performed at Harris Methodist H-E-B hospital (Athe Hospital@).  His widow, individually and as representative
of Casados=s estate,
and his children (collectively, Athe
Casadoses@) sued
the Hospital and several doctors for medical negligence.  The Casadoses later amended their petition to
allege vicarious liability against the Hospital for the alleged negligence of
the doctors.  The trial court dismissed
their direct-negligence claim against the Hospital when the Casadoses failed to
file a timely expert=s
report.  The Hospital then filed a hybrid
conventional and no-evidence summary judgment motion on the vicarious liability
claims.  The trial court granted the
Hospital=s motion
and severed the summary judgment from the remaining claims against the doctors.


The Casadoses appeal from the summary judgment,
arguing that the summary judgment evidence raised a genuine issues of material
fact on the essential elements of ostensible agency.  In a single cross-issue, the Hospital argues
that the trial court erred by failing to award costs and attorney=s fees to the Hospital when it
dismissed the Casadoses=
direct-negligence claims.  We affirm.

II.               
Summary Judgment on Vicarious Liability

A.               
Standard of Review








A movant who conclusively negates at least one
essential element of a cause of action is entitled to summary judgment on that
claim.  IHS Cedars Treatment Ctr. of
Desoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2003) (citing Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex.2002)). When reviewing a
summary judgment, we take as true all evidence favorable to the nonmovant, and
we indulge every reasonable inference and resolve any doubts in the nonmovant=s favor.  Id. 
When a party moves for summary judgment under
both rules 166a(c) and 166a(i), we will first review the trial court=s judgment under the standards of rule 166a(i).  Ford Motor Co. v. Ridgway, 135 S.W.3d
598, 600 (Tex. 2004).  If the appellants
failed to produce more than a scintilla of evidence under that burden, then
there is no need to analyze whether appellee=s summary judgment proof satisfied the less stringent rule 166a(c)
burden.  Id.

B.                
The Casadoses=
Allegations and the Summary Judgment Evidence

 

As the basis of their vicarious-liability claim
against the Hospital, the Casadoses alleged that the defendant doctors were the
Hospital=s
ostensible agents.  The Casadoses alleged
that the decedent reasonably believed that the defendant doctors were the
Hospital=s agents
or employees because the Hospital affirmatively held them out as such or
knowingly permitted the doctors to hold themselves out as the Hospital=s agents or employees and that the
decedent justifiably relied on those representations of authority. 








As summary judgment evidence, the Hospital filed
excerpts from Rachel Casados=s
deposition in which she testified that no member of the Hospital=s administration or nursing staff told
her that the defendant doctors were the Hospital=s
agents or employees.  She also testified
that her husband did not inform her of any such communications with Hospital
administration or nursing staff.  The
Hospital also filed excerpts from Diane Rivera=s
and Michael Casados=s
depositions; they likewise testified that neither the nursing staff nor the
Hospital administration told them that the doctors were the Hospital=s employees and that their father did
not tell them that he believed that the doctors were the Hospital=s employees.  Finally, the Hospital filed a one-page
document titled AUniversal
Consent for Treatment.@  One of the four paragraphs in the document
states:

I
acknowledge and agree that the doctors participating in my care in the Hospital
do not work for the Hospital.  They are
not employees, servants or agents of the Hospital. . . . I acknowledge and
agree that the Hospital is not responsible for the judgment or conduct of any
doctor who treats or provides a professional service to me, but rather is [sic]
an independent contractor who is engaged in private practice and who is not an
agent, servant or employee of the Hospital. 

 








The decedent signed the document under the words AI have read and understand this
information@ on the
day before the surgical procedure made the basis of the suit.








In response to the motion for summary judgment,
the Casadoses filed the affidavit of Annette Velasquez, one of the decedent=s daughters, in which she stated that
she visited her father two or three weeks before the surgery while  he was gathering information about the Hospital
on the Internet.  Velasquez said that A[d]uring this search, my dad found out
that [the defendant doctors] were on staff at [the Hospital].  While we did not talk about this staff issue
specifically, it was my impression based upon this information that [the
doctors] worked for [the Hospital].@  Velasquez also stated that when her father
was transferred from the Hospital to another care facility after his surgery,
one of her father=s
physicians and a Amale
hospital administrator@
went to her father=s room
and told her father, his wife, and Velasquez that the decedent was going to be
transferred to the other facility.  This,
said Velasquez, Areconfirmed
[her] belief that [the doctor] worked for the hospital, since he and the
administrator came to the room together and informed us that [her] dad would be
transferred.@  Finally, Velasquez stated that she never saw
any signs in any area of the Hospital advising that the doctors were not
employees of the Hospital. The Casadoses also filed a one-page addendum to the
Hospital=s written
patient-transfer policy stating that A[t]he
Administrative Supervisors and attending physicians are responsible for
ensuring that the patient is transferred according to statutory guidelines and
[Hospital] Policy 1-1-22.@


C.                
Analysis

To establish a hospital=s
liability for a physician=s
medical malpractice based on ostensible agency, a plaintiff must show (i) he
had a reasonable belief the physician was the agent or employee of the
hospital, (ii) such belief was generated by the hospital affirmatively holding
out the physician as its agent or employee or knowingly permitting the
physician to hold himself out as the hospital=s
agent or employee, and (iii) he justifiably relied on the representation of
authority.  Baptist Mem'l Hosp. Sys.
v. Sampson, 969 S.W.2d 945, 949 (Tex. 1998); Espalin v. Children=s Med. Ctr. of Dallas, 27 S.W.3d
675, 684 (Tex. App.CDallas
2000, no pet.); Valdez v. Pasadena Healthcare Mgmt., Inc., 975 S.W.2d
43, 46 (Tex. App.CHouston
[14th Dist.] 1998, pet. denied).








The Hospital challenged all three elements of the
ostensible-agency test in the no-evidence portion of its summary judgment
motion.  The Casadoses argue that
Velasquez=s
affidavit statement that her father learned that the defendant doctors were Aon staff@
at the Hospital raises a reasonable inference that the decedent Acould have had a reasonable belief@ that the defendant doctors were
employees of the Hospital.  Assuming for
the sake of argument that this is a valid and reasonable inference, it tends to
establish only the first element of the ostensible-agency test.  Velasquez=s
affidavit does not identify the web site from which her father learned this
information; thus, there is no evidence that the Hospital affirmatively
held out the physicians as its agents or employees or knowingly permitted the
physicians to hold themselves out as the hospital=s
agents or employees.  Nor is there any
evidence that the decedent relied on the alleged representation of authority.

The Casadoses also argue that the lack of signs in
the Hospital to alert patients that doctors are not employees of the Hospital Ais an affirmative holding out of [the
defendant doctors] as employees or agents.@  We disagree. 
The absence of such signs is, if anything, a passive silence, not an affirmative
representation.








As for the statement in Velasquez=s affidavit that a Amale administrator@ accompanied the decedent=s physician when the physician told the
decedent=s family
that he would be transferred to another care facility, Velasquez provided no
details of that conversation from which a reasonable person could infer that
the doctor was an employee of the Hospital. 
The mere presence of a Hospital administrator during the conversation
signifies nothing.  Likewise, we see no
reasonable inference of agency arising from the Hospital=s
addendum to its patient-transfer policy; nor is there any evidence that the
decedent relied on any representation in the addendum or was even aware of its
existence.

Considering the Casadoses=
summary judgment evidence in the light most favorable to them, we hold that the
trial court did not err by granting the Hospital=s
no-evidence summary judgment on the Casadoses=
vicarious liability claim.  We do not
reach their argument that the language in the Universal Consent for Treatment
was not clear and conspicuous, and we overrule their sole issue.

III.            
Attorney=s
Fees and Costs Under the MLIIA








In its sole issue, the Hospital argues that the
trial court erred by failing to award the Hospital its attorney=s fees and court costs when it
dismissed the Casadoses=
direct-negligence claims against the Hospital for failing to file an expert
report under the Medical Liability and Insurance Improvement Act (AMLIIA@).[2]

The MLIIA provides that a claimant in a healthcare
liability claim must, with regard to each physician or healthcare provider
against whom a claim is asserted, either file an expert report or voluntarily
nonsuit the action against the physician or healthcare provider.   Tex.
Rev. Civ. Stat. Ann. art. 4590i, '
13.01(d)(1995 version).  The trial court
may extend the 180-day deadline once by up to thirty days, and the parties may
agree to extend the deadline.  Id.
' 13.01(f), (h).  If a claimant fails to file a timely report,

the
court shall, on the motion of the affected physician or health care
provider, enter an order awarding as sanctions against the claimant or the
claimant=s
attorney:

 

(1)
the reasonable attorney=s
fees and costs of court incurred by that defendant; [and]

. . . .

(3)
the dismissal of the action of the claimant against that defendant with
prejudice to the claim=s
refiling.








Id. '
13.01(e) (emphasis added).  But if a
claimant who failed to file a timely report files a motion to extend time
before the hearing on the defendant=s
motion to dismiss, and the trial court finds that the failure to file a timely
report was not intentional or the result of conscious indifference but was the
result of an accident or mistake, the court shall grant a 30-day grace period
to permit the claimant to file an expert report.  Id. '
13.01(g).








The procedural history of this case is
convoluted.  The Casadoses filed their
original petitionCin which
they alleged only direct-liability claims against the HospitalCon August 29, 2003.  Thus, their expert report was originally due
on February 25, 2004.  On February 18,
2004, the trial court extended the deadline for the Casadoses= expert report until the twenty-first
day after the date of the order, or March 10, 2004.  The Hospital filed a motion to dismiss and
for sanctions on February 26, 2004, citing as cause the Casadoses= failure to file an expert report by
February 25.  On March 9, 2004, the
Casadoses amended their petition to assert vicarious-liability claims against
the Hospital and also filed expert reports regarding the defendant
doctors.  On March 15, the Casadoses
filed a response to the Hospital=s
motion to dismiss, requesting a 30-day grace period extension for filing their
expert report under section 13.01(g). 
The trial court=s
docket sheet contains an entry stating that the trial court granted the
extension requested by the Casadoses. 
Also on March 15, the Casadoses filed their second amended petition,
which included the statement that their Aonly
claim[s] against [the Hospital] are under theories of vicarious liability.@ 
On April 13, 2004, the trial court granted the Hospital=s motion to dismiss the Casadoses= direct-liability claims against the
Hospital, but denied the motion with respect to the vicarious-liability claims
and sanctions. 

On July 15, 2004, the Hospital filed another
motion to award attorney=s
fees for the dismissed direct-liability claims. 
The trial court denied the motion on November 23, 2004, on the same day
and in the same order that it granted the Hospital=s
motion for summary judgment on the vicarious-liability claims. 








The parties agree that a claimant is not required
to provide an expert report against a hospital defendant if the only theory of
liability asserted against the hospital is vicarious liability for the actions
of a defendant physician for whom the claimant has filed an expert report.  See In re CHCA Conroe, L.P., No.
09‑04‑453 CV, 2004 WL 2671863, at *1 (Tex. App.CBeaumont Nov. 23, 2004) (orig.
proceeding) (mem. op.).  The
expert-report extensions granted by the trial court made the deadline for the
Casadoses to file their expert report April 9. 
By that time, the Casadoses had amended their petition to assert only
vicarious-liability claims against the Hospital and had filed expert reports
regarding the defendant doctors.

The Hospital argues that the Casadoses continued
to assert direct-liability claims until the trial court dismissed those claims
on April 13.  The Hospital points to
general allegations in the Casadoses=
second amended petition that ADefendants
were negligent@Callegations identical to those in the Casadoses= original petitionCas proof that the Casadoses never
abandoned their direct-liability claims against the Hospital.  But the Casadoses=
second amended petition, filed March 9, 2004, specifically states that their Aonly claim[s] against [the Hospital]
are under theories of vicarious liability.@  Thus, despite the allegations in their second
amended petition that ADefendants,@ generally, were negligent, the
Casadoses expressly disclaimed any direct-liability cause of action against the
Hospital.








Before the extended export-report deadline
arrived, the Casadoses had disclaimed any direct-liability claims against the
Hospital and had filed expert reports regarding the defendant doctors whose
alleged negligence formed the basis of their vicarious-liability claims against
the Hospital.  We therefore hold that the
Casadoses fulfilled their section 13.01(d) expert-report obligation before the
extended deadline, and the trial court did not err by denying the Hospital=s motion for attorney=s fees. 
We overrule the Hospital=s
sole issue.

IV.            
Conclusion

Having overruled both parties= issues, we affirm the trial court=s judgment.

 

ANNE GARDNER

JUSTICE

 

PANEL B:      DAUPHINOT, HOLMAN, and GARDNER, JJ.

 

DELIVERED:  July 20, 2006











[1]See Tex. R. App. P. 47.4.





[2]See Act
of May 5, 1995, 74th Leg., R.S., ch. 140, ' 1, 1995 Tex. Gen. Laws 985,
985-87, repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, '
10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex. Civ. Prac. & Rem. Code Ann. '
74.351 (Vernon Supp. 2005)).  All section
references in this opinion are to the 1995 version of Texas Revised Civil
Statutes article 4590i, which was in effect at the time this suit was filed and
will be referred to as the A1995 version@ or Aformer
version.@  The Casadoses filed their original petition
three days before the current version took effect.