casados v. harris methodist heb

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-05-080-CV

RACHEL CASADOS, INDIVIDUALLY AND APPELLANTS

AS REPRESENTATIVE OF THE ESTATE                              AND APPELLEES

OF LAWRENCE CASADOS, DECEASED, AND

ROSEMARY SULLIVAN, ANNETTE VELASQUEZ, 

MICHAEL CASADOS, LARRY CASADOS, 

DIANE RIVERA, AND LINDA K. COLE, AS 

NATURAL BIOLOGICAL ADULT CHILDREN 

OF LAWRENCE CASADOS, DECEASED

V.

HARRIS METHODIST H-E-B APPELLEE AND

APPELLANT

------------

FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Introduction

Lawrence Casados (“the decedent”) died following surgery performed at Harris Methodist H-E-B hospital (“the Hospital”).  His widow, individually and as representative of Casados’s estate, and his children (collectively, “the Casadoses”) sued the Hospital and several doctors for medical negligence.  The Casadoses later amended their petition to allege vicarious liability against the Hospital for the alleged negligence of the doctors.  The trial court dismissed their direct-negligence claim against the Hospital when the Casadoses failed to file a timely expert’s report.  The Hospital then filed a hybrid conventional and no-evidence summary judgment motion on the vicarious liability claims.  The trial court granted the Hospital’s motion and severed the summary judgment from the remaining claims against the doctors. 

The Casadoses appeal from the summary judgment, arguing that the summary judgment evidence raised a genuine issues of material fact on the essential elements of ostensible agency.  In a single cross-issue, the Hospital argues that the trial court erred by failing to award costs and attorney’s fees to the Hospital when it dismissed the Casadoses’ direct-negligence claims.  We affirm.

Summary Judgment on Vicarious Liability

Standard of Review

A movant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.
  IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason, 
143 S.W.3d 794, 798 (Tex. 2003) (citing 
Sw. Elec. Power Co. v. Grant
, 73 S.W.3d 211, 215 (Tex.2002)). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.  
Id.  
When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court’s judgment under the standards of rule 166a(i).  
Ford Motor Co. v. Ridgway, 
135 S.W.3d 598, 600 (Tex. 2004).  If the appellants failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether appellee’s summary judgment proof satisfied the less stringent rule 166a(c) burden.  
Id.

The Casadoses’ Allegations and the Summary Judgment Evidence

As the basis of their vicarious-liability claim against the Hospital, the Casadoses alleged that the defendant doctors were the Hospital’s ostensible agents.  The Casadoses alleged that the decedent reasonably believed that the defendant doctors were the Hospital’s agents or employees because the Hospital affirmatively held them out as such or knowingly permitted the doctors to hold themselves out as the Hospital’s agents or employees and that the decedent justifiably relied on those representations of authority. 

As summary judgment evidence, the Hospital filed excerpts from Rachel Casados’s deposition in which she testified that no member of the Hospital’s administration or nursing staff told her that the defendant doctors were the Hospital’s agents or employees.  She also testified that her husband did not inform her of any such communications with Hospital administration or nursing staff.  The Hospital also filed excerpts from Diane Rivera’s and Michael Casados’s depositions; they likewise testified that neither the nursing staff nor the Hospital administration told them that the doctors were the Hospital’s employees and that their father did not tell them that he believed that the doctors were the Hospital’s employees.  Finally, the Hospital filed a one-page document titled “Universal Consent for Treatment.”  One of the four paragraphs in the document states:

I acknowledge and agree that the doctors participating in my care in the Hospital do not work for the Hospital.  They are not employees, servants or agents of the Hospital. . . . I acknowledge and agree that the Hospital is not responsible for the judgment or conduct of any doctor who treats or provides a professional service to me, but rather is [sic] an independent contractor who is engaged in private practice and who is not an agent, servant or employee of the Hospital. 

The decedent signed the document under the words “I have read and understand this information” on the day before the surgical procedure made the basis of the suit.

In response to the motion for summary judgment, the Casadoses filed the affidavit of Annette Velasquez, one of the decedent’s daughters, in which she stated that she visited her father two or three weeks before the surgery while  he was gathering information about the Hospital on the Internet.  Velasquez said that “[d]uring this search, my dad found out that [the defendant doctors] were on staff at [the Hospital].  While we did not talk about this staff issue specifically, it was my impression based upon this information that [the doctors] worked for [the Hospital].”  Velasquez also stated that when her father was transferred from the Hospital to another care facility after his surgery, one of her father’s physicians and a “male hospital administrator” went to her father’s room and told her father, his wife, and Velasquez that the decedent was going to be transferred to the other facility.  This, said Velasquez, “reconfirmed [her] belief that [the doctor] worked for the hospital, since he and the administrator came to the room together and informed us that [her] dad would be transferred.”  Finally, Velasquez stated that she never saw any signs in any area of the Hospital advising that the doctors were not employees of the Hospital. The Casadoses also filed a one-page addendum to the Hospital’s written patient-transfer policy stating that “[t]he Administrative Supervisors and attending physicians are responsible for ensuring that the patient is transferred according to statutory guidelines and [Hospital] Policy 1-1-22.” 

Analysis

To establish a hospital’s liability for a physician’s medical malpractice based on ostensible agency, a plaintiff must show (i) he had a reasonable belief the physician was the agent or employee of the hospital, (ii) such belief was generated by the hospital affirmatively holding out the physician as its agent or employee or knowingly permitting the physician to hold himself out as the hospital’s agent or employee, and (iii) he justifiably relied on the representation of authority.  
Baptist Mem'l Hosp. Sys. v. Sampson
, 969 S.W.2d 945, 949 (Tex. 1998); 
Espalin v. Children’s Med. Ctr. of Dallas, 
27 S.W.3d 675, 684 (Tex. App.—Dallas 2000, no pet.); 
Valdez v. Pasadena Healthcare Mgmt., Inc.
, 975 S.W.2d 43, 46 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

The Hospital challenged all three elements of the ostensible-agency test in the no-evidence portion of its summary judgment motion.  The Casadoses argue that Velasquez’s affidavit statement that her father learned that the defendant doctors were “on staff” at the Hospital raises a reasonable inference that the decedent “could have had a reasonable belief” that the defendant doctors were employees of the Hospital.  Assuming for the sake of argument that this is a valid and reasonable inference, it tends to establish only the first element of the ostensible-agency test.  Velasquez’s affidavit does not identify the web site from which her father learned this information; thus, there is no evidence that the 
Hospital
 affirmatively held out the physicians as its agents or employees or knowingly permitted the physicians to hold themselves out as the hospital’s agents or employees.  Nor is there any evidence that the decedent relied on the alleged representation of authority.

The Casadoses also argue that the lack of signs in the Hospital to alert patients that doctors are not employees of the Hospital “is an affirmative holding out of [the defendant doctors] as employees or agents.”  We disagree.  The absence of such signs is, if anything, a passive silence, not an affirmative representation.

As for the statement in Velasquez’s affidavit that a “male administrator” accompanied the decedent’s physician when the physician told the decedent’s family that he would be transferred to another care facility, Velasquez provided no details of that conversation from which a reasonable person could infer that the doctor was an employee of the Hospital.  The mere presence of a Hospital administrator during the conversation signifies nothing.  Likewise, we see no reasonable inference of agency arising from the Hospital’s addendum to its patient-transfer policy; nor is there any evidence that the decedent relied on any representation in the addendum or was even aware of its existence.

Considering the Casadoses’ summary judgment evidence in the light most favorable to them, we hold that the trial court did not err by granting the Hospital’s no-evidence summary judgment on the Casadoses’ vicarious liability claim.  We do not reach their argument that the language in the Universal Consent for Treatment was not clear and conspicuous, and we overrule their sole issue.

Attorney’s Fees and Costs Under the MLIIA

In its sole issue, the Hospital argues that the trial court erred by failing to award the Hospital its attorney’s fees and court costs when it dismissed the Casadoses’ direct-negligence claims against the Hospital for failing to file an expert report under the Medical Liability and Insurance Improvement Act (“MLIIA”).
(footnote: 2)
 The MLIIA provides that a claimant in a healthcare liability claim must, with regard to each physician or healthcare provider against whom a claim is asserted, either file an expert report or voluntarily nonsuit the action against the physician or healthcare provider. 
  Tex. Rev. Civ. Stat. Ann
. art. 4590i, § 13.01(d)(1995 version).  The trial court may extend the 180-day deadline once by up to thirty days, and the parties may agree to extend the deadline.  
Id.
 § 13.01(f), (h).  If a claimant fails to file a timely report,

the court 
shall
, on the motion of the affected physician or health care provider, enter an order awarding as sanctions against the claimant or the claimant’s attorney:

(1) the reasonable attorney’s fees and costs of court incurred by that defendant; [and]

. . . .

(3) the dismissal of the action of the claimant against that defendant with prejudice to the claim’s refiling.

Id.
 § 13.01(e) (emphasis added).  But if a claimant who failed to file a timely report files a motion to extend time before the hearing on the defendant’s motion to dismiss, and the trial court finds that the failure to file a timely report was not intentional or the result of conscious indifference but was the result of an accident or mistake, the court shall grant a 30-day grace period to permit the claimant to file an expert report.  
Id
. § 13.01(g).

The procedural history of this case is convoluted.  The Casadoses filed their original petition—in which they alleged only direct-liability claims against the Hospital—on August 29, 2003.  Thus, their expert report was originally due on February 25, 2004.  On February 18, 2004, the trial court extended the deadline for the Casadoses’ expert report until the twenty-first day after the date of the order, or March 10, 2004.  The Hospital filed a motion to dismiss and for sanctions on February 26, 2004, citing as cause the Casadoses’ failure to file an expert report by February 25.  On March 9, 2004, the Casadoses amended their petition to assert vicarious-liability claims against the Hospital and also filed expert reports regarding the defendant doctors.  On March 15, the Casadoses filed a response to the Hospital’s motion to dismiss, requesting a 30-day grace period extension for filing their expert report under section 13.01(g).  The trial court’s docket sheet contains an entry stating that the trial court granted the extension requested by the Casadoses.  Also on March 15, the Casadoses filed their second amended petition, which included the statement that their “only claim[s] against [the Hospital] are under theories of vicarious liability.”  On April 13, 2004, the trial court granted the Hospital’s motion to dismiss the Casadoses’ direct-liability claims against the Hospital, but denied the motion with respect to the vicarious-liability claims and sanctions. 

On July 15, 2004, the Hospital filed another motion to award attorney’s fees for the dismissed direct-liability claims.  The trial court denied the motion on November 23, 2004, on the same day and in the same order that it granted the Hospital’s motion for summary judgment on the vicarious-liability claims. 

The parties agree that a claimant is not required to provide an expert report against a hospital defendant if the only theory of liability asserted against the hospital is vicarious liability for the actions of a defendant physician for whom the claimant has filed an expert report.  
See
 
In re CHCA Conroe, L.P., 
No. 09-04-453 CV, 2004 WL 2671863, at *1 (Tex. App.—Beaumont Nov. 23, 2004) (orig. proceeding) (mem. op.).  The expert-report extensions granted by the trial court made the deadline for the Casadoses to file their expert report April 9.  By that time, the Casadoses had amended their petition to assert only vicarious-liability claims against the Hospital and had filed expert reports regarding the defendant doctors.

The Hospital argues that the Casadoses continued to assert direct-liability claims until the trial court dismissed those claims on April 13.  The Hospital points to general allegations in the Casadoses’ second amended petition that “Defendants were negligent”—allegations identical to those in the Casadoses’ original petition—as proof that the Casadoses never abandoned their direct-liability claims against the Hospital.  But the Casadoses’ second amended petition, filed March 9, 2004, specifically states that their “only claim[s] against [the Hospital] are under theories of vicarious liability.”  Thus, despite the allegations in their second amended petition that “Defendants,” generally, were negligent, the Casadoses expressly disclaimed any direct-liability cause of action against the Hospital.

Before the extended export-report deadline arrived, the Casadoses had disclaimed any direct-liability claims against the Hospital and had filed expert reports regarding the defendant doctors whose alleged negligence formed the basis of their vicarious-liability claims against the Hospital.  We therefore hold that the Casadoses fulfilled their section 13.01(d) expert-report obligation before the extended deadline, and the trial court did not err by denying the Hospital’s motion for attorney’s fees.  We overrule the Hospital’s sole issue.

Conclusion

Having overruled both parties’ issues, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL B: DAUPHINOT, HOLMAN, and GARDNER, JJ.

DELIVERED:
  July 20, 2006

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
See
 Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 985-87, 
repealed by 
Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at 
Tex. Civ. Prac. & Rem. Code Ann
. § 74.351 (Vernon Supp. 2005)).  All section references in this opinion are to the 1995 version of Texas Revised Civil Statutes article 4590i
, which was in effect at the time this suit was filed and will be referred to as the “1995 version” or “former version.”
  The Casadoses filed their original petition three days before the current version took effect.